# EXHIBIT 1

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

MAYA RESTAURANTS, INC.,

      Plaintiff,

   v.

FESTIVAL FUN PARKS, LLC,

      Defendant.

CIVIL DIVISION

NO.:  GD-

**COMPLAINT**

Filed on behalf of Plaintiff:
Prasad Sivram, Inc.

Counsel of record for this Party:

BRAD N. SOMMER, ESQUIRE
PA ID #: 87312

JOSEPH D. ZIEGLER, ESQUIRE
PA ID #: 318462

SOMMER LAW GROUP, PC
6 Market Square
Pittsburgh, PA 15222
(412) 471-1266
Fax (412) 471-3175



EXHIBIT

A

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

MAYA RESTAURANTS, INC.,                    CIVIL DIVISION

NO.:  GD-

        Plaintiff,

        v.

FESTIVAL FUN PARKS, LLC,

        Defendant.

### NOTICE TO DEFEND

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.**

**LAWYER REFERRAL SERVICE**
**ALLEGHENY COUNTY BAR ASSOCIATION**
**11TH FLOOR KOPPERS BUILDING**
**436 SEVENTH AVENUE**
**PITTSBURGH, PA 15219**
**(412) 261-5555**

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

MAYA RESTAURANTS, INC.,         CIVIL DIVISION

                             NO.:  GD-

        Plaintiff,

      v.

FESTIVAL FUN PARKS, LLC,

        Defendant.

## COMPLAINT

AND NOW, comes Plaintiff, Maya Restaurants, Inc., by and through its attorneys,

Sommer Law Group, P.C., and files this Complaint against Defendant, Festival Fun Parks, LLC,

and in support thereof avers the following:

## GENERAL ALLEGATIONS

1.   Plaintiff, Maya Restaurants, Inc., is a Pennsylvania entity with a mailing address of 2972

Trafford Road, Murrysville, PA 15668.

2.   Defendant, Festival Fun Parks, LLC, is a Pennsylvania limited liability company with an

address of 4800 Kennywood Boulevard, West Mifflin, PA 15122.

3.   On or about October 31, 2013, the Plaintiff, through assignor Prasad Shivram, Inc. and

assigns, and Defendant entered into an Agreement of Sale for Plaintiff, as an assignee of Prasad

Shivram, Inc. and assigns, to purchase from the Defendant a commercial property situated at 623

Long Run Road, McKeesport, PA 15131 having Tax Parcel Identification Numbers 0554-E-

00233-0000-00 and 0554-E-00225-0000-00, hereinafter the "Subject Premises." (Attached hereto as Exhibit "A" Agreement of Sale).

4.   Paragraph 12(a) of the Agreement of Sale, entitled "Property Defects Disclosure" specifically states that "Seller represents and warrants that Seller has no knowledge except as noted in this Agreement that: (2) the property contains wetlands, flood plains, or any other environmentally sensitive areas development of which is limited or precluded by law," and the Agreement of Sale is void of any acknowledgement of any wetlands, flood plains or the like. See Exhibit "A" Paragraph 12(a).

5.   On or about June 6, 2014, title to the Subject Premises was transferred by deed to Maya Restaurants, Inc. from the defendant. (Attached hereto is Exhibit "B" Deed dated June 6, 2014).

6.   During the course of 2015, the Plaintiff began experiencing major flooding in the basement of the Subject Premises.

7.   As the Subject Premises was intended to be a restaurant, the flooding has presenting considerable problems and has precluded the Plaintiff from being able to use the property in the manner for which it was purchase, and the manner in for which the Defendant knew it was being purchase.

8.   Plaintiff discovered that the property had an underground spring or aquifer which continuously exerted pressure on the Subject Premises resulting in frequent prolonged and unpredictable flooding.

9.   The Defendant, as Seller of the subject premises, knew or should have known of the condition of the underground spring or aquifer, and pursuant to Paragraph 12(a) of the lease agreement had a duty to disclose the existence of the underground spring to the Plaintiff/Buyer.

10. The Defendant did not disclose the condition of the underground spring, and as a result the Plaintiff has suffered damages included, but not limited to, lost profits, cost to repair the flooded basement, cost to install an interior French drain system, cost to repair concrete and landscaping around the exterior of the building, as well as the damages caused by a failed Health Department Report on the basis of flooding.

11. On or about April 29, 2015, the Plaintiff hired Duckstein Contracting, Inc. to provide an estimate for the cost to repair the damages caused by the underground spring or aquifer flooding. (Attached hereto as Exhibit "C" Duckstein Contracting Estimate).

12. Duckstein Contracting, Inc. provided the Plaintiff with a cost to repair the basement of the Subject Premises of $56,805.52, as well as a cost to install a French drain system amounting to $61,848.74, and Plaintiff suffered additional costs amounting to $45,000.00 for the exterior repair and landscaping upon completion of the French drain.

13. Additionally, Plaintiff, an experienced restaurateur, anticipated an approximate monthly profit of $35,000.00 from the Subject Premises, and, as the Subject Premises has been unable to open due to the failure of the Defendant to disclose critical and required information regarding the underground spring, the Plaintiff has experienced and continues to experience loss of profits.

14. The Subject Premises was partially mortgaged by the Defendant/Seller as mortgagee.

15. It is believed and therefore averred that the remaining amount due under the Mortgage is $50,000.00.

16. On or about December 7, 2015, counsel for the Plaintiff sent to counsel for the Defendant a letter suspending performance under the mortgage until resolution of the Plaintiff's claims citing the Defendant's failure to disclose the underground spring or aquifer. (See attached hereto as Exhibit "D" Letter dated December 7, 2015.

17. The Plaintiff would not have agreed to purchase the subject premises, and would not have experienced damages, but for the Defendant's failure to disclose the underground spring and associated flooding problems.

## COUNT I-VIOLATION OF THE REAL ESTATE SELLER DISCLOSURE LAW

18. The Plaintiff hereby incorporates by reference Paragraphs 1-17 of its Complaint as though set forth at length.

19. As the seller of Real Estate, the Defendant, Festival Fun Parks, LLC, was required to disclose material defects in the Subject Premises about which they knew or should have known pursuant to the Real Estate Seller Disclosure Law.

20. Defendant failed to disclose material defects in the Subject Premises about which they knew or should have know including, but not limited to, the Defendant's failure to disclose that an underground spring or aquifer caused flooding on the Subject Premises.

21. The Defendant's representation, in Paragraph 12(a) of the Agreement of Sale that "Seller represents and warrants that Seller has no knowledge except as noted in this Agreement that: (2) the property contains wetlands, flood plains, or any other environmentally sensitive areas development of which is limited or precluded by law" was false and/or deceptively produced in order to deceive the Plaintiff as to the true condition of the Subject Premises. See Exhibit "A" Paragraph 12(a).

22. Defendant completed the Agreement of Sale in such a way as to either affirmatively misrepresent the true condition of the Subject Premises to the Plaintiff, or in such a way as to conceal the presence of defects to mislead and/or induce the Plaintiff into believing that no defects existed.

23. The Agreement of Sale was completed by the Defendant in such a way as to be false, deceptive and/or misleading.

24. The flooding caused on the Subject Premises by the undisclosed condition created by the underground spring would have significantly decreased the value and utility of the Subject Premises.

25. The condition was of such severity and frequency and of such an open and obvious nature that the Defendant must have known or should have known of the condition.

WHEREFORE, Plaintiff demands judgment in its favor and against Defendants in excess of the arbitration limits, including but not limited to, costs to repair, finds, interests, costs, lost profits, attorney's fees, and punitive damages.

## COUNT II-FRAUDULENT MISREPRESENTATION AND/OR
## FRAUD IN THE INDUCEMENT

26. The Plaintiff hereby incorporates by reference Paragraphs 1-25 of its Complaint as though set forth at length.

27. The misrepresentations and/or omissions as provided in Paragraphs 19-25 *supra* constitute material misrepresentations relating to the purchase of the Subject Premises.

28. Defendant made these misrepresentations to the Plaintiff through the Agreement of Sale and by otherwise failing to bring the known conditions to the attention of the Plaintiff.

29. Defendant made the mispresentations with full knowledge of their falsity and with the intent of inducing Plaintiff to purchase the Subject Premises when the Plaintiff would not have otherwise purchased the subject premises.

30. Plaintiff justifiably relief on the misrepresentations of the Defendant in purchasing the Subject Premises.

31. The misrepresentations of the Defendant have caused the Plaintiff to suffer damages in the cost to remediate the defective condition of the Subject Premises.

WHEREFORE, Plaintiff demands judgment in its favor and against Defendant in excess of the arbitration limits, including, but not limited to, costs, attorney's fees, punitive damages and any and all other relief as may be deemed appropriate.

## COUNT III-DECLARATORY JUDGMENT

32. The Plaintiff hereby incorporates by reference Paragraphs 1-31 of its Complaint as though set forth at length.

33. The Subject Premises was partially mortgaged by the Defendant/Seller as mortgagee.

34. It is believed and therefore averred that the remaining amount due under the Mortgage is $50,000.00.

35. On or about December 7, 2015, counsel for the Plaintiff sent to counsel for the Defendant a letter suspending performance under the mortgage until resolution of the Plaintiff's claims citing the Defendant's failure to disclose the underground spring or aquifer. (See attached hereto as Exhibit "D" Letter dated December 7, 2015.

36. The Plaintiff would not have agreed to purchase the subject premises, and would not have experienced damages, but for the Defendant's failure to disclose the underground spring and associated flooding problems.

37. Plaintiff, as the holder of a deed and as a contracting party, is permitted under the Pennsylvania Declaratory Judgment Acts to have the rights, duties and obligations of the parties conclusively determined.

38. As Plaintiff's assent under the Agreement of Sale was procured directly through the tortiuous conduct of the Defendant, namely the Defendant's misrepresentation and violation of

the Pennsylvania Seller Disclosure Law as set forth in Count I and Count II of the Plaintiff's

Complaint, the Plaintiff seeks to have a determination made as to the responsibilities of the

Plaintiff to perform, namely the Plaintiff seeks to be excused from performance under the

remainder of the contract.

WHEREFORE, Plaintiff demands judgment in its favor and against Defendant through the

determination that the Plaintiff is excused from continuing performance  and that the mortgage is

satisfied.

Respectfully Submitted,

/s/Brad N. Sommer

BRAD N. SOMMER, ESQUIRE

## VERIFICATION

I verify that the statements made herein are true and correct to the best of my knowledge, information, and belief, and are made subject to the penalties of 18 Pa. C.S.A. §4904 relating to unsworn falsification to authorities.

Dated : 1 - 15 - 2016

_____
PRASAD BANDHU o/b/a Maya Restaurants, Inc.

## AGREEMENT FOR THE SALE OF COMMERCIAL REAL ESTATE     ASC

This form recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of REALTORS® (PAR).

---

**SELLER'S BUSINESS RELATIONSHIP WITH PA LICENSED BROKER**

BROKER (Company) _____ BROKER 1 REALTY, INC. _____ PHONE ____ 724.863.0771

ADDRESS ____ 11639 Route 30 ____ North Huntingdon, PA 15642 ____ FAX ____ 724.863.0585

LICENSEE(S) _____ Dual Agency _____ Designated Agent ☐ Yes ☐ No

BROKER IS THE AGENT FOR SELLER.   OR (if checked below):

Broker is NOT the Agent for Seller and is a/an: ☐ AGENT FOR BUYER   ☐ TRANSACTION LICENSEE

---

**BUYER'S BUSINESS RELATIONSHIP WITH PA LICENSED BROKER**

BROKER (Company) _____ BROKER 1 REALTY, INC. _____ PHONE _____

ADDRESS ____ 11639 Route 30 ____ North Huntingdon, PA 15642 ____ FAX _____

LICENSEE(S) _____ Barbara Sukava _____ Designated Agent ☐ Yes ☐ No

BROKER IS THE AGENT FOR BUYER.   OR (if checked below):

Broker is NOT the Agent for Buyer and is a/an: ☐ AGENT FOR SELLER   ☐ SUBAGENT FOR SELLER   ☐ TRANSACTION LICENSEE

---

When the same Broker is Agent for Seller and Agent for Buyer, Broker is a Dual Agent. All of Broker's licensees are also Dual Agents UNLESS there are separate Designated Agents for Buyer and Seller. If the same Licensee is designated for Seller and Buyer, the Licensee is a Dual Agent.

1. This Agreement, dated _____ October 31, 2013 _____ is between

   SELLER(S): Festival Fun Parks, LLC _____

   _____, called "Seller," and

   BUYER(S)  *PRASAD SIVRAM INC   OR ASSIGNS* _____

   _____, called "Buyer."

2. PROPERTY. Seller hereby agrees to sell and convey to Buyer, who hereby agrees to purchase:

   ALL THAT CERTAIN lot or piece of ground with buildings and improvements thereon erected, if any, known as:

   823 Long Run Road _____ McKeesport, PA 15131 _____

   in the ____ City ____ of ____ McKeesport ____, County of ____ East Allegheny ____

   Commonwealth of Pennsylvania. Identification (e.g., Tax ID #; Parcel #; Lot, Block; Deed Book, Page, Recording Data):

   0554-E-00233-0000-00 and 0554-E-00225-0000-00 _____

3. TERMS (10-06)

   (A) Purchase Price ____ One Hundred Thousand ____ $132,500 ____ U.S. Dollars     *JPG*

       which will be paid to Seller by Buyer as follows:

       1. Cash or check at signing this Agreement _____ $ ____ 1000

       2. Cash or check within ____ days of the execution of this Agreement ____ $ _____

       3. _____ $ _____

       4. _____ $ _____

       5. Cash or Cashier's check at time of settlement _____ $ ____ 132,500

                                                          TOTAL $ ~~100,000.00~~

   (B) Deposits paid by Buyer within ____ 30 ____ DAYS of settlement will be cash or cashier's check. Deposits, regardless of the form of payment and the person designated as payee, will be paid in U.S. Dollars to Broker for Seller (unless otherwise stated here), Held in escrow by Broker 1     *JPG*
       Realty, Inc _____

       _____, who will retain

       deposits in an escrow account until consummation or termination of this Agreement in conformity with all applicable laws and regulations. Any

       check tendered as deposit monies may be held uncashed pending the acceptance of this Agreement.

   (C) Seller's written approval to be on or before: _____ November 5, 2013 _____

   (D) Settlement to be on ____ November 12, 2013 ____, or before if Buyer and Seller agree.

Buyer Initials: _____     ASC Page 1 of 9          Seller Initials: ____ JPG ____

                                     Revised 8/11

COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2011

Pennsylvania Association of REALTORS®                                          10-06

Form generated by: TrueForms™   www.TrueForms.com   800-499-9612



**EXHIBIT A**

41  (E)  Conveyance from Seller will be by fee simple deed of special warranty unless otherwise stated here: _____
42  _____
43  _____
44  _____
45
46  (F)  Payment of transfer taxes will be divided equally between Buyer and Seller unless otherwise stated here: _____
47  _____
48  _____
49
50  (G)  At time of settlement, the following will be adjusted pro-rata on a daily basis between Buyer and Seller, reimbursing where applicable: taxes
51  (see Notices and Information Regarding Real Estate Taxes); rents; interest on mortgage assumptions; condominium fees, if any; water and/or
52  sewer fees, if any, together with any other lienable municipal service. All charges will be pro-rated for the period(s) covered. Seller will pay up
53  to and including the date of settlement and Buyer will pay for all days following settlement, unless otherwise stated here:
54  _____
55  _____
56  (H)  Buyer will reimburse Seller for the actual costs of any remaining heating, cooking or other fuels stored on the Property at the time of settlement,
57  unless otherwise stated here: _____
58

**4.  MIXTURES & PERSONAL PROPERTY (1-90)**
60  (A)  INCLUDED in this sale are all existing items permanently installed in the Property, free of liens, including plumbing; heating; HVAC equip-
61  ment; lighting fixtures (including chandeliers and ceiling fans); and water treatment systems, unless otherwise stated below. Also included:
62  <u>As-Is Without Warranty or Representation</u>
63  _____
64  _____
65  _____
66  _____
67  (B)  LEASED items (not owned by Seller): _____
68  _____
69  _____
70  _____
71  _____
72  _____
73  (C)  EXCLUDED fixtures and items: _____
74  _____
75  _____
76  _____
77  _____
78  _____

**5.  POSSESSION (5-##)**
80  (A)  Possession is to be delivered by deed, keys and:
81       1.  Physical possession to vacant Property free of debris, with all structures broom-clean, at day and time of settlement, unless otherwise
82           stated here: _____
83                                                                                                    AND/OR
84       2.  Assignment of existing lease(s), together with any security deposits and interest, at day and time of settlement, if Property is leased at the
85           execution of this Agreement, unless otherwise specified here: _____
86  _____
87  _____
88  _____
89  _____
90  _____
91  _____
92  _____
93  _____
94  _____
95  _____
96  _____
97  _____
98  _____
99  (B)  Buyer will acknowledge existing lease(s) by initialing the lease(s) at the execution of this Agreement, unless otherwise specified.
100 (C)  Seller will not enter into any new leases, extensions of existing leases or additional leases for the Property without the written consent of Buyer.

101  Buyer Initials: _____          ASC Page 2 of 9          Seller Initials: _JPG_
                                                Revised 8/11

Form generated by TrueForms™    www.TrueForms.com    800-499-9612

102  6. **DATES/TIME IS OF THE ESSENCE (9-95)**

103  (A)  The settlement date and all other dates and times referred to for the performance of any of the obligations of this Agreement are of the essence
104       and are binding.

105  (B)  For purposes of this Agreement, the number of days will be counted from the date of execution, excluding the day this Agreement was exe-
106       cuted and including the last day of the time period. The Execution Date of this Agreement is the date when Buyer and Seller have indicated
107       full acceptance of this Agreement by signing and/or initialing it. All changes to this Agreement should be initialed and dated.

108  (C)  The settlement date is not extended by any other provision of this Agreement and may only be extended by mutual written agreement of the parties.

109  (D)  Certain time periods are pre-printed in this Agreement as a convenience to the Buyer and Seller. All pre-printed time periods are negotiable
110       and may be changed by striking out the pre-printed text and inserting a different time period acceptable to all parties.

111  7. **FINANCING CONTINGENCY (18-06)**

112  ☒  WAIVED. This sale is NOT contingent on financing, although Buyer may still obtain financing.

113  ☐  ELECTED

114  (A)  This sale is contingent upon Buyer obtaining financing as follows:

115       1. Amount of loan $ _____

116       2. Minimum Term _____ years

117       3. Type of loan _____

118       4. Buyer agrees to accept the interest rate as may be committed by the lender, not to exceed a maximum interest rate of _____ %.

119  (B)  Within _____ days (10 if not specified) from the Execution Date of this Agreement, Buyer will make a completed, written application for the
120       financing terms stated above to a responsible lender(s) of Buyer's choice. Broker for Buyer, if any, otherwise Broker for Seller, is author-
121       ized to communicate with the lender(s) to assist in the financing process.

122  (C)  Should Buyer furnish false or incomplete information to Seller, Broker(s), or the lender(s) concerning Buyer's legal or financial status,
123       or fail to cooperate in good faith in processing the financing application, which results in the lender(s) refusing to approve a financing
124       commitment, Buyer will be in default of this Agreement.

125  (D)  1. Upon receipt of a financing commitment, Buyer will promptly deliver a copy of the commitment to Seller.

126       2. Financing commitment date _____

127       Unless otherwise agreed to in writing by Buyer and Seller, if a written commitment is not received by Seller by the above date, this
128       Agreement will be VOID, with all deposit monies returned to Buyer according to the terms of paragraph 20. Buyer will be responsible
129       for any premiums for mechanics' lien insurance and/or title search, or fee for cancellation of same, if any; AND/OR any premiums for
130       flood insurance and/or fire insurance with extended coverage, insurance binder charges or cancellation fee, if any; AND/OR any apprais-
131       al fees and charges paid in advance to lender.

132  8. **STATUS OF WATER (5-01)**

     Seller represents that the Property is served by:

134  ☒  Public Water

135  ☐  Co-op Water

136  ☐  Community Water

137  ☐  None

138  ☐  _____

139  Seller warrants that the system(s) are fully paid for as of the Execution Date of this Agreement.

140  9. **STATUS OF SEWER (5-01)**

141  Seller represents that the Property is served by:

142  ☒  Public Sewer

143  ☐  Community Sewage Disposal System

144  ☐  Off-Property Sewage Disposal System

145  ☐  Individual On-lot Sewage Disposal System (see Sewage Notice 1)

146  ☐  Individual On-lot Sewage Disposal System in Proximity to Well (see Sewage Notice 1; see Sewage Notice 4, if applicable)

147  ☐  Ten-acre Permit Exemption (see Sewage Notice 2)

148  ☐  Holding Tank (see Sewage Notice 3)

149  ☐  None (see Sewage Notice 1)

150  ☐  None Available/Permit Limitations in Effect (See Sewage Notice 5 or Sewage Notice 6, as applicable)

151  ☐  _____

152  Seller warrants that the system(s) are fully paid for as of the Execution Date of this Agreement.

153  10. **ZONING CLASSIFICATION (9-01)**

154  Failure of this Agreement to contain the zoning classification (except in cases where the property [and each parcel thereof, if subdividable] is zoned
155  solely or primarily to permit single-family dwellings) will render this Agreement voidable at the option of the Buyer, and, if voided, any deposits
156  tendered by the Buyer will be returned to the Buyer without any requirement for court action.

157  Zoning Classification: _____

158  11. **ZONING CONTINGENCY (11-06)**

159  ☒  WAIVED.

160  ☐  ELECTED. Contingency Period: _____ days (15 if not specified) from the Execution Date of this Agreement.

161  (A)  Within the Contingency Period, Buyer, at Buyer's expense, may verify that Buyer's proposed use of the Property as _____
162       _____ is permitted under the current zoning classification for the Property and is
163       not prohibited by any other governmental land use restrictions.

164  Buyer Initials _____          ASC Page 3 of 9          Seller Initials _____
                                               Revised 8/11

Form generated by TrueForms™   www.TrueForms.com   800-489-8812

(B)   If Buyer's proposed use of the Property is not permitted, Buyer will, within the Contingency Period, notify Seller in writing that the proposed
use of the Property is not permitted, and Buyer will:

☐ Option 1
1. Accept the Property and agree to the RELEASE in paragraph 25 of this Agreement, OR
2. Terminate the Agreement of Sale by written notice to Seller, with all deposit monies returned to Buyer according to the terms of para-
graph 20 of this Agreement, OR
3. Enter into a mutually acceptable written agreement with Seller.
If Buyer and Seller do not reach a written agreement during the Contingency Period and Buyer does not terminate the
Agreement of Sale by written notice to Seller within that time, Buyer will accept the Property and agree to the RELEASE in
paragraph 25 of this Agreement.

☐ Option 2
1. Within the Contingency Period, Buyer will make a formal written application for zoning approval, variance, non-conforming use,
or special exception from _____ (municipality) to use the Property as
_____ (proposed use). Buyer will pay for
application, legal representation, and any other costs associated with the application and approval process.
2. If the municipality requires the application to be signed by the current owner, Seller agrees to do so.
3. If final, unappealable approval is not obtained by _____, Buyer will:
(A)  Accept the Property with the current zoning and agree to the RELEASE in paragraph 25 of this Agreement, OR
(B)  Terminate the Agreement of Sale by written notice to Seller, with all deposit monies returned to Buyer according to the terms
of paragraph 20 of this Agreement, OR
(C)  Enter into a mutually acceptable written agreement with Seller.
If Buyer and Seller do not reach a written agreement before the time for obtaining final approval, and Buyer does not
terminate the Agreement of Sale by written notice to Seller within that time, Buyer will accept the Property and agree
to the terms of the RELEASE in paragraph 25 of this Agreement.

**12. PROPERTY DEFECTS DISCLOSURE (13-21)**

(A)  Seller represents and warrants that Seller has no knowledge except as noted in this Agreement that: (1) The premises have been contaminated
by any substance in any manner which requires remediation; (2) The Property contains wetlands, flood plains, or any other environmentally
sensitive areas, development of which is limited or precluded by law; (3) The Property contains asbestos, polychlorinated biphenyls, lead-
based paint or any other substance, the removal or disposal of which is subject to any law or regulation; and (4) Any law has been violated in
the handling or disposing of any material or waste or the discharge of any material into the soil, air, surface water, or ground water.

(B)  Seller and Buyer acknowledge that any Broker identified in this Agreement: (1) Is a licensed real estate broker; (2) Is not an expert in con-
struction, engineering, or environmental matters; and (3) Has not made and will not make any representations or warranties nor conduct invest-
igations of the environmental condition or suitability of the Property or any adjacent property, including but not limited to those conditions list-
ed in paragraph 12 (A).

(C)  Seller agrees to indemnify and to hold Broker harmless from and against all claims, demands, or liabilities, including attorneys fees and court
costs, which arise from or are related to the environmental condition or suitability of the Property prior to, during, or after Seller's occupation
of the Property including without limitation any condition listed in paragraph 12(A).

(D)  The provisions of this paragraph will survive settlement.

**13. NOTICES AND ASSESSMENTS (5-01)**

(A)  Seller represents, as of the date Seller signed this Agreement, that no public improvement, condominium or owner association assessments have
been made against the Property which remain unpaid, and that no notice by any government or public authority has been served upon Seller or
anyone on Seller's behalf, including notices relating to violations of zoning, housing, building, safety or fire ordinances that remain uncorrect-
ed, and that Seller knows of no condition that would constitute a violation of any such ordinances that remains uncorrected, unless otherwise
specified here: AS-IS Condition accepted by Buyer without warranty or representation, buyer assumes all liabilities
related to the property except as may be covered under section 12(a) above

(B)  Seller knows of no other potential notices (including violations) and assessments except as follows: _____
_____
_____
_____

(C)  Any notice of improvements or assessments received on or before the date of Seller's acceptance of this Agreement, unless improvements con-
sist of sewer or water lines not in use, shall be the responsibility of the Seller; any notices received thereafter shall be the responsibility of the
Buyer.

(D)  If required by law, Seller will deliver to Buyer, on or before settlement, a certification from the appropriate municipal department or depart-
ments disclosing notice of any uncorrected violation of zoning, building, safety, or fire ordinances.

(E)  Access to a public road may require issuance of a highway occupancy permit from the Department of Transportation.

**14. TITLE & COSTS (14-06)**

(A)  The Property is to be conveyed free and clear of all liens, encumbrances, and easements, EXCEPTING HOWEVER the following: existing
deed restrictions, historic preservation restrictions or ordinances, building restrictions, ordinances, easements of roads, easements visible upon
the ground, easements of record, privileges or rights of public service companies, and land use restrictions pursuant to property enrollment in
a preferential tax program if any.

Buyer Initials: _____   ASC Page 4 of 9   Seller Initials: _____
Revised 8/11

Form generated by: TrueForms™   www.TrueForms.com   800-499-9612

228 (B) Buyer will pay for the following: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for cancellation;
229 (2) Flood insurance, fire insurance with extended coverage, mine subsidence insurance, or any fee for cancellation; (3) Appraisal fees and
230 charges paid in advance to mortgage lender(s); (4) Buyer's customary settlement costs and accruals.

231 (C) Any survey or surveys required by the title insurance company or the abstracting attorney for preparing an adequate legal description of the
232 Property (or the correction thereof) will be obtained and paid for by Seller. Any survey or surveys desired by Buyer or required by a lender will
233 be obtained and paid for by Buyer.

234 (D) If Seller is unable to give a good and marketable title and such as is insurable by a reputable title insurance company at the regular rates, as specified
235 in paragraph 14 (A), Buyer will:
236 1. Accept the Property with such title as Seller can give, with no change to the purchase price, and agree to the RELEASE in paragraph 25 of this
237 Agreement, OR
238 2. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of paragraph 20 of
239 this Agreement. Upon termination, Seller will reimburse Buyer for any costs incurred by Buyer for any inspections or certifications obtained
240 according to the terms of this Agreement, and for those items specified in paragraph 14 (B) items (1), (2), (3) and in paragraph 14 (C).

241 **15. COAL NOTICE (Where Applicable)**
242 THIS DOCUMENT MAY NOT SELL, CONVEY, TRANSFER, INCLUDE OR INSURE THE TITLE TO THE COAL AND RIGHTS OF SUPPORT UNDERNEATH THE SURFACE LAND
243 DESCRIBED OR REFERRED TO HEREIN, AND THE OWNER OR OWNERS OF SUCH COAL MAY HAVE THE COMPLETE LEGAL RIGHT TO REMOVE ALL SUCH COAL AND
244 IN THAT CONNECTION, DAMAGE MAY RESULT TO THE SURFACE OF THE LAND AND ANY HOUSE, BUILDING OR OTHER STRUCTURE ON OR IN SUCH LAND. (This
245 notice is set forth in the manner provided in Section 1 of the Act of July 17, 1957, P.L. 984.) "Buyer acknowledges that he may not be obtaining the
246 right of protection against subsidence resulting from coal mining operations, and that the property described herein may be protected from damage
247 due to mine subsidence by a private contract with the owners of the economic interests in the coal. This acknowledgement is made for the purpose
248 of complying with the provisions of Section 14 of the Bituminous Mine Subsidence and the Land Conservation Act of April 27, 1966." Buyer agrees
249 to sign the deed from Seller which deed will contain the aforesaid provision.

250 **16. TAX DEFERRED EXCHANGE (10-01)**
251 [X] NOT APPLICABLE.
252 [ ] APPLICABLE. If Seller wishes to enter into a tax deferred exchange for the Property pursuant to Section 1031 of the Internal Revenue Code,
253 Buyer agrees to cooperate with Seller in connection with such exchange, including the execution of such documents as may be reasonably nec-
254 essary to conduct the exchange, provided that there shall be no delay in the agreed-to settlement date, and that any additional costs associated
255 with the exchange are paid solely by Seller. Buyer is aware that Seller anticipates assigning Seller's interest in this Agreement to a third party
256 under an Exchange Agreement and consents to such assignments. Buyer shall not be required to execute any note, contract, deed or other doc-
257 ument providing any liability which would survive the exchange, nor shall Buyer be obligated to take title to any property other than the
258 Property described in this Agreement. Seller shall indemnify and hold harmless Buyer against any liability which arises or is claimed to have
259 arisen from any aspect of the exchange transaction.

260 **17. COMMERCIAL CONDOMINIUM (10-01)**
261 [X] NOT APPLICABLE.
262 [ ] APPLICABLE. Buyer acknowledges that the condominium unit to be transferred by this Agreement is intended for nonresidential use, and
263 that Buyer may agree to modify or waive the applicability of certain provisions of the Uniform Condominium Act of Pennsylvania (68 Pa. C.S.,
264 §3101 et seq.).

265 **18. RECORDING (9-05)** This Agreement will not be recorded in the Office of the Recorder of Deeds or in any other office or place of public record.
266 If Buyer causes or permits this Agreement to be recorded, Seller may elect to treat such act as a breach of this Agreement.

267 **19. ASSIGNMENT (9-05)** This Agreement is binding upon the parties, their heirs, personal representatives, guardians and successors, and to the extent
268 assignable, on the assigns of the parties hereto. Buyer will not transfer or assign this Agreement without the written consent of Seller unless other-
269 wise stated in this Agreement.

270 **20. DEFAULT, TERMINATION & RETURN OF DEPOSITS (8-11)**
271 (A) Where Buyer terminates this Agreement pursuant to any right granted by this Agreement, Buyer will be entitled to a return of all deposit monies
272 paid on account of Purchase Price pursuant to the terms of Paragraph 20(B), and this Agreement will be VOID. Termination of this Agreement
273 may occur for other reasons giving rise to claims by Buyer and/or Seller for the deposit monies.
274 (B) Regardless of the apparent entitlement to deposit monies, Pennsylvania law prohibits a Broker holding deposit monies to determine who is enti-
275 tled to the deposit monies when settlement does not occur. If this Agreement is terminated for any reason, the Broker can only release the
276 deposit monies:
277 1. If there is no dispute over entitlement to the deposit monies, Buyer and Seller agree that a written agreement signed by both parties is evi-
278 dence that there is no dispute regarding deposit monies.
279 2. According to the terms of a written agreement signed by the Buyer and Seller directing Broker how to distribute some or all of the monies.
280 3. According to the terms of a final order of court.
281 4. According to the terms of a prior written agreement between Buyer and Seller that directs the Broker how to distribute the deposit monies if
282 there is a dispute between the parties that is not resolved. (See Paragraph 20(C))

283 Buyer Initials: _____   ASC Page 5 of 9   Seller Initials: _JPL_
Revised 8/11

Form generated by: TrueForms™   www.TrueForms.com   800-499-9612

284 (C) Buyer and Seller agree that if there is a dispute over the entitlement to deposit monies that is unresolved ___ 365 days after the Settlement Date
285 stated in Paragraph 3(D), or any written extensions thereof, the Broker holding the deposit monies will, within 30 days of receipt of Buyer's
286 written request, distribute the deposit monies to Buyer unless the Broker has received verifiable written notice that the dispute is the subject of
287 litigation. If Broker has received verifiable written notice of litigation before receiving Buyer's request for distribution, Broker will continue to
288 hold the deposit monies until receiving either a written distribution agreement signed by Buyer and Seller or a final court order. Buyer and Seller
289 are advised to initiate litigation for any portion of the deposit monies prior to any distribution made by Broker pursuant to this paragraph. Buyer
290 and Seller agree that the distribution of deposit monies based upon the passage of time does not legally determine entitlement to deposit monies,
291 and that the parties may maintain their legal rights to pursue litigation even after a distribution is made.
292 (D) Buyer and Seller agree that Broker who holds or distributes deposit monies pursuant to the terms of Paragraph 20 or Pennsylvania law will not
293 be liable for those deposit monies to either Buyer or Seller, absent Broker's gross negligence or wrongful intentional actions. Buyer and Seller
294 agree that if any Broker or affiliated licensee is named in litigation regarding deposit monies, entitlement to deposit monies or distribution of
295 deposit monies, then the Broker's and/or licensee's attorneys' fees and costs incurred for participating in such litigation will be paid by the party
296 naming them or joining them in the litigation.
297 (E) Seller has the option of retaining all sums paid by Buyer, including the deposit monies, should Buyer:
298   1.  Fail to make any additional payments as specified in Paragraph 3, OR
299   2.  Furnish false or incomplete information to Seller, Broker(s), or any other party identified in this Agreement concerning Buyer's legal or
300     financial status, OR
301   3.  Violate or fail to fulfill and perform any other terms or conditions of this Agreement.
302 (F) Unless otherwise checked in Paragraph 20(G), Seller may elect to retain those sums paid by Buyer, including deposit monies:
303   1.  On account of purchase price, OR
304   2.  As monies to be applied to Seller's damages, OR
305   3.  As liquidated damages for such default.
306 (G) ☒ SELLER IS LIMITED TO RETAINING SUMS PAID BY BUYER, INCLUDING DEPOSIT MONIES, AS LIQUIDATED DAMAGES.
307 (H) If Seller retains all sums paid by Buyer, including deposit monies, as liquidated damages pursuant to Paragraph 20(F) or (G), Buyer and Seller
308     are released from further liability or obligation and this Agreement is VOID.
309 (I) Brokers and licensees are not responsible for unpaid deposits.
310 **21.  REAL ESTATE RECOVERY FUND (9-05)**
311     A Real Estate Recovery Fund exists to reimburse any persons who have obtained a final civil judgment against a Pennsylvania real estate licensee
312     owing to fraud, misrepresentation, or deceit in a real estate transaction and who have been unable to collect the judgment after exhausting all legal and
313     equitable remedies. For complete details about the Fund, call (717) 783-3658 or (800) 822-2113 (within Pennsylvania) and (717) 783-4854 (out- side
314     Pennsylvania).
315 **22.  MAINTENANCE & RISK OF LOSS (10-06)**
316 (A) Seller will maintain the Property, grounds, fixtures and personal property specifically listed in this Agreement in its present condition, normal
317     wear and tear excepted.  *as in commercial/responsible efforts + material,  (N) ___*
318 (B) Seller will promptly notify the Buyer if, at any time prior to the time of settlement, all or any portion of the Property is destroyed, or damaged,
319     as a result of any cause whatsoever.
320 (C) Seller bears the risk of loss from fire or other casualties until settlement. If any property included in this sale is destroyed and not replaced,
321     Buyer will:
322   1.  Accept the Property in its then current condition together with the proceeds of any insurance recovery obtainable by Seller, OR
323   2.  Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of paragraph 20 of
324     this Agreement.
325 **23.  CONDEMNATION (10-06)**
326     Seller has no knowledge of any current or pending condemnation or eminent domain proceedings that would affect the Property. If any portion
327     of the Property should be subject to condemnation or eminent domain proceedings after the signing of this Agreement, Seller shall immediately
328     advise Buyer, in writing, of such proceedings. Buyer will have the option to terminate this Agreement by written notice to Seller within
329     ____ days (15 days if not specified) after Buyer learns of the filing of such proceedings, with all deposit monies returned to Buyer accord-
330     ing to the terms of paragraph 20 of this Agreement. Buyer's failure to provide notice of termination within the time stated will constitute a
331     WAIVER of this contingency and all other terms of this Agreement remain in full force and effect.
332 **24.  WAIVER OF CONTINGENCIES (9-05)**
333     If this Agreement is contingent on Buyer's right to inspect and/or repair the Property, or to verify environmental conditions, boundaries,
334     certifications, zoning classification or use, or any other information regarding the Property, Buyer's failure to exercise any of Buyer's
335     options within the times set forth in this Agreement is a WAIVER of that contingency and Buyer accepts the Property and agrees to the
336     RELEASE in paragraph 25 of this Agreement.
337 **25.  RELEASE (9-05)**
338     Buyer releases, quit claims and forever discharges SELLER, ALL BROKERS, their LICENSEES, EMPLOYEES and any OFFICER or
339     PARTNER of any one of them and any other PERSON, FIRM or CORPORATION who may be liable by or through them, from any and
340     all claims, losses or demands, including, but not limited to, personal injury and property damage and all of the consequences thereof,
341     whether known or not, which may arise from the presence of termites or other wood-boring insects, radon, lead-based paint hazards, mold,
342     fungi or indoor air quality, environmental hazards, any defects in the individual on-lot sewage disposal system or deficiencies in the on-site
343     water service system, or any defects or conditions on the Property. Should Seller be in default under the terms of this Agreement, or in vio-
344     lation of any seller disclosure law or regulation, this release does not deprive Buyer of any right to pursue any remedies that may be avail-
345     able under law or equity. This release will survive settlement.

346 Buyer Initials: _____ _____          ASC Page 6 of 9          Seller Initials: _JPG_
                                             Revised 8/11

Form generated by: TrueForms™   www.TrueForms.com   800-488-9612

347 **26. REPRESENTATIONS (9-05)**

348    (A) All representations, claims, advertising, promotional activities, brochures or plans of any kind made by Seller, Brokers, their licensors, employ-
349     ees, officers or partners are not a part of this Agreement unless expressly incorporated or stated in this Agreement. This Agreement contains
350     the whole agreement between Seller and Buyer, and there are no other terms, obligations, covenants, representations, statements or conditions,
351     oral or otherwise, of any kind whatsoever concerning this sale. This Agreement will not be altered, amended, changed or modified except in
352     writing executed by the parties.

353    (B) Unless otherwise stated in this Agreement, Buyer has inspected the Property (including fixtures and any personal property specifical-
354     ly listed herein) before signing this Agreement or has waived the right to do so, and agrees to purchase the Property IN ITS PRESENT
355     CONDITION. Buyer acknowledges that Brokers, their licensors, employees, officers or partners have not made an independent exam-
356     ination or determination of the structural soundness of the Property, the age or condition of the components, environmental conditions,
357     the permitted uses or of conditions existing in the locale where the Property is situated; nor have they made a mechanical inspection
358     of any of the systems contained therein.

359    (C) Any repairs required by this Agreement will be completed in a workmanlike manner.
360    (D) Broker(s) have provided or may provide services to assist unrepresented parties in complying with this Agreement.

361 **27. CERTIFICATION OF NON-FOREIGN INTEREST (10-01)**

362    ☐ Seller IS a foreign person, foreign corporation, foreign partnership, foreign trust, or foreign estate subject to Section 1445 of the Internal
363     Revenue Code, which provides that a transferee (Buyer) of a U.S. real property interest must withhold tax if the transferor (Seller) is a foreign
364     person.

365    ☒ Seller is NOT a foreign person, foreign corporation, foreign partnership, foreign trust, or a foreign estate as defined by the Internal Revenue
366     Code, or is otherwise not subject to the tax withholding requirements of Section 1445 of the Internal Revenue Code. To inform Buyer that the
367     withholding of tax is not required upon the sale/disposition of the Property by Seller, Seller hereby agrees to furnish Buyer, at or before clos-
368     ing, with the following:
369       ☐ An affidavit stating, under penalty of perjury, the Seller's U.S. taxpayer identification number and that the Seller is not a foreign person.
370       ☐ A "qualifying statement," as defined by statute, that tax withholding is not required by Buyer.
371       ☐ Other: _____

372    Seller understands that any documentation provided under this provision may be disclosed to the Internal Revenue Service by Buyer, and that any
373    false statements contained therein could result in punishment by fine, imprisonment, or both.

374 **28. ARBITRATION OF DISPUTES (1-96)** Buyer and Seller agree to arbitrate any dispute between them that cannot be amicably resolved. After writ-
375    ten demand for arbitration by either Buyer or Seller, each party will select a competent and disinterested arbitrator. The two so selected will select
376    a third. If selection of the third arbitrator cannot be agreed upon within 30 days, either party may request that selection be made by a judge of a court
377    of record in the county in which arbitration is pending. Each party will pay the chosen arbitrator, and bear equally expenses for the third and all other
378    expenses of arbitration. Arbitration will be conducted in accordance with the provisions of Pennsylvania Common Law Arbitration 42 Pa. C.S.A.
379    §7341 et seq. This agreement to arbitrate disputes arising from this Agreement will survive settlement.

380 **29. BROKER INDEMNIFICATION (10-01)**
381    Buyer and Seller represent that the only Brokers involved in this transaction are: Broker-1 Realty, Inc.
382    _____
383    _____

384    and that the transaction has not been brought about through the effort of anyone other than said Brokers. It is agreed that if any claims for brokerage
385    commissions or fees are ever made against Buyer or Seller in connection with this transaction, each party shall pay its own legal fees and costs
386    in connection with such claims. It is further agreed that Buyer and Seller agree to indemnify and hold harmless each other and the above-listed
387    Brokers from and against the non-performance of this Agreement by either party, and from any claim of loss or claim for brokerage commissions,
388    including all legal fees and costs, that may be made by any person or entity. This paragraph shall survive settlement.

389 **30. GOVERNING LAW, VENUE & PERSONAL JURISDICTION (9-05)**
390    (A) The validity and construction of this Agreement, and the rights and duties of the parties, will be governed in accordance with the laws of the
391     Commonwealth of Pennsylvania.
392    (B) The parties agree that any dispute, controversy or claim arising under or in connection with this Agreement or its performance by either party
393     shall be decided exclusively by and in the state or federal courts sitting in the Commonwealth of Pennsylvania.

394 **31. NOTICE BEFORE SIGNING (5-01)**
395    Buyer and Seller acknowledge that Brokers have advised them to consult and retain experts concerning the legal and tax effects of this Agreement
396    and the completion of the sale, as well as the condition and/or legality of the Property, including, but not limited to, the Property's improvements,
397    equipment, soil, termites, title and environmental aspects. Return by facsimile transmission (FAX) of this Agreement, and all addenda, bearing the
398    signatures of all parties, constitutes acceptance of this Agreement.

399 **32. NOTICE**
400    All notice requirements under the provisions of this Agreement or by application of statutory or common law will be addressed to the appropriate
401    party, at the address listed below via any means of delivery as mutually agreed upon by the parties and stated here: _____
402    _____
403    _____
404    _____

405    If to Seller:   Jerome Gibas- GM      with mandatory copy to : Michael Beroni-GC  Palace Entertainment
406         Kennywood                        4500 MacArthur Blvd 4th fl  Newport Beach, CA 92660
407         W Mifflin, PA 15122
408

409    Buyer Initials: _____      ASC Page 7 of 9      Seller Initials: _JB6_

Revised 8/13

410  With a copy to:  BRAD SOMMER / Sommer LAW
411  6 MARKET SQ
412  PGH PA 15222
413
414
415  If to Buyer:
416
417
418
419  With a copy to:
420
421
422

423  33.  SPECIAL CLAUSES
424  (A)  The following are part of this Agreement if checked:
425       ☐                              ☐
426
427  (B)  SPECIAL PROVISIONS (IF ANY):
428       Sale is for Real Property only, not for any intellectual property or business. In no event may either party be liable for
429       punitive, consequential, "business loss" or special damages. Buyer understands that Seller makes no
430       representations or warranty regarding the suitability of the property for any particular use.
431

470  Buyer Initials: _____       ASC Page 8 of 9          Seller Initials: JPb _____
                                          Revised 8/11

Form generated by: TrueForms™   www.TrueForms.com   800-486-8612

471 ☒ Buyer has received the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code §35.336.
472 ☐ Buyer has received a statement of Buyer's estimated closing costs before signing this Agreement.
473 ☒ Buyer has read and understands the notices and explanatory information set forth in this Agreement.
474 ☒ Buyer has received the Deposit Money Notice (for cooperative sales when Broker for Seller is holding deposit money) before signing
475    this Agreement.

476 Buyer and Seller acknowledge receipt of a copy of this Agreement at the time of signing.

477 WITNESS/ATTEST _____ BUYER _____ DATE 10-30-13
478 Buyer(s)Name _PLACID SUYAM I-L_____
479
480 Mailing Address _2097 TABTONS RD_____ Murrysville___ PA 15668
481 Phone _____ FAX _____ E-Mail _____

482 WITNESS/ATTEST _____ BUYER _____ DATE _____
483 Buyer(s)Name _____
484 Mailing Address _____
485 Phone _____ FAX _____ E-Mail _____

486 WITNESS/ATTEST _____ BUYER _____ DATE _____
487 Buyer(s)Name _____
488 Mailing Address _____
489 Phone _____ FAX _____ E-Mail _____

490 ☒ Seller has received the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code §35.336.
491 ☒ Seller has received a statement of Seller's estimated closing costs before signing this Agreement.
492 ☒ Seller has read and understands the notices and explanatory information in this Agreement.

493 VOLUNTARY TRANSFER OF CORPORATE ASSETS (if applicable): The undersigned acknowledges that he/she is authorized by the Board of
494 Directors to sign this Agreement on behalf of the Seller corporation and that this sale does not constitute a sale, lease, or exchange of all or substantially
495 all the property and assets of the corporation, such as would require the authorization or consent of the shareholders pursuant to 15 P.S. §1311.

496 WITNESS/ATTEST _____ SELLER _____ DATE _____
497 Seller(s)Name _____ Festival Fun Parks, LLC_____
498 Mailing Address _____
499 Phone _____ FAX _____ E-Mail _____

500 WITNESS/ATTEST _Jason P Gutra_____ SELLER __JPG_____ DATE 11-5-13
501 Seller(s)Name _Jackyne P. Gibor  G.M.____
502 Mailing Address _4800 Kenny Wood Blvd.___ West Mifflin, PA 15122
503 Phone _412-461-0500____ FAX _____ E-Mail _____

504 WITNESS/ATTEST _____ SELLER _____ DATE _____
505 Seller(s)Name _____
506 Mailing Address _____
507 Phone _____ FAX _____ E-Mail _____

JPG

ASC Page 9 of 9
Revised 3/11

Form generated by: TrueForms™   www.TrueForms.com   800-499-9612

## COMMUNICATIONS WITH BUYER AND/OR SELLER

Wherever this Agreement contains a provision that requires or allows communication/delivery to a Buyer, that provision shall be satisfied by communication/delivery to the Broker for Buyer, if any. If there is no Broker for Buyer, those provisions may be satisfied only by communication/delivery being made directly to the Buyer, unless otherwise agreed to by the parties.

Wherever this Agreement contains a provision that requires or allows communication/delivery to a Seller, that provision shall be satisfied by communication/delivery to the Broker for Seller, if any. If there is no Broker for Seller, those provisions may be satisfied only by communication/delivery being made directly to the Seller, unless otherwise agreed to by the parties.

## INFORMATION REGARDING REAL ESTATE TAXES

Real Estate Tax Proration: For purposes of prorating real estate taxes, the "periods covered" by the tax bills are as follows:

Municipal Taxes:   For all counties and municipalities in Pennsylvania, tax bills are for the period January 1 to December 31.
School Taxes:      For all school districts, other than the Philadelphia, Pittsburgh and Scranton school districts, the period covered by the tax bill is July 1 to June 30. For the Philadelphia, Pittsburgh and Scranton school districts, tax bills are for the period January 1 to December 31.

Real Estate Assessment Notice: In Pennsylvania, taxing authorities (school districts and municipalities) and property owners may appeal the assessed value of a property at the time of sale or at any time thereafter. A successful appeal by a taxing authority may result in a higher assessed value for the property and an increase in property taxes. Also, periodic county-wide property reassessments may change the assessed value of the property and result in a change in property tax.

## EXPERTISE OF REAL ESTATE AGENTS

Pennsylvania Real Estate Agents are required to be licensed by the Commonwealth of Pennsylvania and are obligated to disclose adverse factors about a property that are reasonably apparent to someone with expertise in the marketing of real property.
(A)  If Buyer wants information regarding specific conditions or components of the property which are outside the Agent's expertise, the advice of the appropriate professionals should be sought.
(B)  If Buyer wants financial, legal, or any other advice, Buyer is encouraged to seek the services of an accountant, lawyer, or other appropriate professional.

## NOTICE REGARDING CONVICTED SEX OFFENDERS (MEGAN'S LAW)

The Pennsylvania General Assembly has passed legislation (often referred to as "Megan's Law," 42 Pa.C.S. § 9791 et. seq.) providing for community notification of the presence of certain convicted sex offenders. Buyers are encouraged to contact the municipal police department or the Pennsylvania State Police for information relating to the presence of sex offenders near a particular property, or to check the information on the Pennsylvania State Police Web site at www.pameganslaw.state.pa.us.

Notices Page 1 of 2

JPG

Form generated by: TrueForms™    www.TrueForms.com    800-400-9612

## SEWAGE NOTICES

### NOTICES PURSUANT TO THE PENNSYLVANIA SEWAGE FACILITIES ACT

**NOTICE 1:** THERE IS NO CURRENTLY EXISTING COMMUNITY SEWAGE SYSTEM AVAILABLE FOR THE SUBJECT PROPERTY.

Section 7 of the Pennsylvania Sewage Facilities Act provides that no person shall install, construct, request bid proposals for construction, alter, repair or occupy any building or structure for which an individual sewage system is to be installed, without first obtaining a permit. Buyer is advised by this notice that, before signing this Agreement, Buyer should contact the local agency charged with administering the Act to determine the procedure and requirements for obtaining a permit for an individual sewage system. The local agency charged with administering the Act will be the municipality where the property is located or that municipality working cooperatively with others.

**NOTICE 2:** THIS PROPERTY IS SERVICED BY AN INDIVIDUAL SEWAGE SYSTEM INSTALLED UNDER THE TEN-ACRE PERMIT EXEMPTION PROVISIONS OF SECTION 7 OF THE PENNSYLVANIA SEWAGE FACILITIES ACT.

(Section 7 provides that a permit may not be required before installing, constructing, awarding a contract for construction, altering, repairing or connecting to an individual sewage system where a ten-acre parcel or lot is subdivided from a parent tract after January 10, 1987). Buyer is advised that soils and site testing were not conducted and that, should the system malfunction, the owner of the Property or properties served by the system at the time of a malfunction may be held liable for any contamination, pollution, public health hazard or nuisance, which occurs as a result.

**NOTICE 3:** THIS PROPERTY IS SERVICED BY A HOLDING TANK (PERMANENT OR TEMPORARY) TO WHICH SEWAGE IS CONVEYED BY A WATER CARRYING SYSTEM AND WHICH IS DESIGNED AND CONSTRUCTED TO FACILITATE ULTIMATE DISPOSAL OF THE SEWAGE AT ANOTHER SITE. Pursuant to the Pennsylvania Sewage Facilities Act, Seller must provide a history of the annual cost of maintaining the tank from the date of its installation or December 14, 1995, whichever is later.

**NOTICE 4:** AN INDIVIDUAL SEWAGE SYSTEM HAS BEEN INSTALLED AT AN ISOLATION DISTANCE FROM A WELL THAT IS LESS THAN THE DISTANCE SPECIFIED BY REGULATION. The regulations at 25 Pa. Code §73.13 pertaining to minimum horizontal isolation distances provide guidance. Subsection (b) of §73.13 states that the minimum horizontal isolation distance between an individual water supply or water supply system suction line and treatment tanks shall be 50 feet. Subsection (c) of §73.13 states that the horizontal isolation distance between the individual water supply or water supply system suction line and the perimeter of the absorption area shall be 100 feet.

**NOTICE 5:** THIS LOT IS WITHIN AN AREA IN WHICH PERMIT LIMITATIONS ARE IN EFFECT AND IS SUBJECT TO THOSE LIMITATIONS. SEWAGE FACILITIES ARE NOT AVAILABLE FOR THIS LOT AND CONSTRUCTION OF A STRUCTURE TO BE SERVED BY SEWAGE FACILITIES MAY NOT BEGIN UNTIL THE MUNICIPALITY COMPLETES A MAJOR PLANNING REQUIREMENT PURSUANT TO THE PENNSYLVANIA SEWAGE FACILITIES ACT AND REGULATIONS PROMULGATED THEREUNDER.

**NOTICE 6:** A REQUIRED REVISION FOR NEW LAND DEVELOPMENT, OR AN EXCEPTION TO THE REQUIREMENT TO REVISE, OR A REQUIRED SUPPLEMENT HAS NOT BEEN APPROVED FOR THIS LOT. SEWAGE FACILITIES ARE NOT AVAILABLE FOR THIS LOT AND SEWAGE FACILITIES WILL NOT BE AVAILABLE, NOR MAY CONSTRUCTION BEGIN UNTIL SEWAGE FACILITIES PLANNING HAS BEEN APPROVED PURSUANT TO THE PENNSYLVANIA SEWAGE FACILITIES ACT AND REGULATIONS PROMULGATED THEREUNDER.

Notices Page 2 of 2

*JPG*

**CHANGE IN TERMS ADDENDUM TO AGREEMENT OF SALE**                    CTA

This form recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of REALTORS® (PAR).

1  **PROPERTY** _____ 623 Long Run Road _____
2  **SELLER** _____ Festival Fun Parks _____
3  **BUYER** _____ Prasad  Sivram Inc (Assigns) (Wingharts) _____
4  **DATE OF AGREEMENT** _____ October 31, 2013 _____

5  The following terms of the Agreement of Sale are changed as stated below:
6  **I.  PURCHASE PRICE**
7     Purchase price is changed from $ _____ to $ _____
8  **2.  SELLER ASSIST**
9     Seller Assist is changed to $ _____, or _____ % of the Purchase price, maximum, toward Buyer's costs as permitted
10    by the mortgage lender, if any. Seller is only obligated to pay up to the amount or percentage which is approved by mortgage
11    lender.
12 **3.  ACCEPTANCE & SETTLEMENT**
13    (A) Written acceptance of all parties will be on or before: _____
14    (B) Settlement Date is changed from _____ November 12, 2013 _____ to _____ January 2̶8̶ 30, 2014 _____
16 **4.  FIXTURES AND PERSONAL PROPERTY**
16    (A) The following items are INCLUDED in this sale: _____
17    (B) The following items are LEASED: _____
18    (C) The following items are EXCLUDED in this sale: _____
19 **5.  MORTGAGE TERMS**
20    (A) Mortgage Type is changed from _____ to _____
21    (B) Mortgage amount
22       1.  First mortgage amount is changed from $ _____ to $ _____
23       2.  Second mortgage amount is changed from $ _____ to $ _____ .
24    (C) Mortgage Lender
25       1.  First mortgage lender is changed to _____
26       2.  Second mortgage lender is changed to _____
27       3.  Buyer will submit a completed, written mortgage application to the identified lender(s), if any, according to the terms of
28          the Mortgage Contingency paragraph of the Agreement of Sale on or before: _____
29    (D) Loan-To-Value (LTV) ratio (For non-FHA/VA loans)
30       1.  First mortgage LTV ratio not to exceed _____ %
31       2.  Second mortgage LTV ratio not to exceed _____ %
32    (E) Mortgage Commitment Date is changed from _____ to _____
33 **6.  TIME PERIOD CONTINGENCIES**
34    (A) Contingency Periods
35       1.  The contingency period for _____, elected in the Agreement of Sale is changed to _____
36       2.  The contingency period for _____, elected in the Agreement of Sale is changed to _____
37       3.  The contingency period for _____, elected in the Agreement of Sale is changed to _____
38    (B) Additional Time Periods
39       1.  The time period in paragraph _____, line _____ of Agreement of Sale is changed to _____
40       2.  The time period in paragraph _____, line _____ of Agreement of Sale is changed to _____
41       3.  The time period in paragraph _____, line _____ of Agreement of Sale is changed to _____
42 **7.  OTHER**
43    _____
44    _____
45    _____
46    _____
47    _____

48 All other terms and conditions of the Agreement, including all other time periods, remain unchanged and in full force and effect.

49  WITNESS _____  (X)BUYER _____  DATE 12/26/13
50  WITNESS _____  BUYER _____  DATE _____
51  WITNESS _____  BUYER _____  DATE _____
52  WITNESS _____  SELLER _____  DATE _____
53  WITNESS _____  SELLER _____  DATE _____
54  WITNESS _____  SELLER _____  DATE _____

Pennsylvania Association of REALTORS®                COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2010
7/10

Form generated by: TrueForms™ from REVEAL® SYSTEMS, Inc. 800-499-9612

FEB-01-2014 07:58 From:                    To:4122234340              Page:1/1

# CHANGE IN TERMS ADDENDUM TO AGREEMENT OF SALE

This form recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of REALTORS® (PAR)

CTA

1  PROPERTY _____ 823 Long Run Road _____
2  SELLER _____ Festival Fun Parks _____
3  BUYER _____ Prasad Sivram Inc (Assigns) (Winghart's) _____
4  DATE OF AGREEMENT _____ October 31, 2013 _____

5  The following terms of the Agreement of Sale are changed as stated below:
6  **1. PURCHASE PRICE**
7     Purchase price is changed from $_____ to $_____
8  **2. SELLER ASSIST**
9     Seller Assist is changed to $_____ , or _____% of the Purchase price, maximum, toward Buyer's costs as permitted
10    by the mortgage lender, if any. Seller is only obligated to pay up to the amount or percentage which is approved by mortgage
11    lender.
12 **3. ACCEPTANCE & SETTLEMENT**
13    (A) Written acceptance of all parties will be on or before: _____
14    (B) Settlement Date is changed from _____ January 30, 2014 _____ to _____ February 28, 2014 _____
15 **4. FIXTURES AND PERSONAL PROPERTY**
16    (A) The following items are INCLUDED in this sale: _____
17    (B) The following items are LEASED: _____
18    (C) The following items are EXCLUDED in this sale: _____
19 **5. MORTGAGE TERMS**
20    (A) Mortgage Type is changed from _____ to _____
21    (B) Mortgage amount
22       1. First mortgage amount is changed from $_____ to $_____
23       2. Second mortgage amount is changed from $_____ to $_____
24    (C) Mortgage Lender
25       1. First mortgage lender is changed to _____
26       2. Second mortgage lender is changed to _____
27       3. Buyer will submit a completed, written mortgage application to the identified lender(s), if any, according to the terms of
28          the Mortgage Contingency paragraph of the Agreement of Sale on or before: _____
29    (D) Loan-To-Value (LTV) ratio (For non-FHA/VA loans)
30       1. First mortgage LTV ratio not to exceed _____%
31       2. Second mortgage LTV ratio not to exceed _____%
32    (E) Mortgage Commitment Date is changed from _____ to _____
33 **6. TIME PERIOD CONTINGENCIES**
34    (A) Contingency Periods
35       1. The contingency period for _____, elected in the Agreement of Sale is changed to _____
36       2. The contingency period for _____, elected in the Agreement of Sale is changed to _____
37       3. The contingency period for _____, elected in the Agreement of Sale is changed to _____
38    (B) Additional Time Periods
39       1. The time period in paragraph _____, line _____ of Agreement of Sale is changed to _____
40       2. The time period in paragraph _____, line _____ of Agreement of Sale is changed to _____
41       3. The time period in paragraph _____, line _____ of Agreement of Sale is changed to _____
42 **7. OTHER**
43    _____
44    _____
45    _____
46    _____
47    _____
48 All other terms and conditions of the Agreement, including all other time periods, remain unchanged and in full force and effect.
49 WITNESS _____ BUYER _____ DATE 1-31-2014
50 WITNESS _____ BUYER _____ DATE _____
51 WITNESS _____ BUYER _____ DATE _____
52 WITNESS _____ SELLER _____ DATE 2-5-14
53 WITNESS _____ SELLER _____ DATE _____
54 WITNESS _____ SELLER _____ DATE _____

Pennsylvania Association of REALTORS®              COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2010
Form generated by **True Forms**™ from REVEAL® SYSTEMS, Inc. 800-499-9612



Allegheny County
Jerry Tyskiewicz
Department of Real Estate
Pittsburgh, PA 15219

*14B-179*

66 2014 0001 4938

Instrument Number: 2014-14938     BK-DE VL-15627 PG-442

Recorded On: June 10, 2014     As-Deed

Parties: FESTIVAL FUN PARKS L L C

To     MAYA RESTAURANTS INC     # of Pages: 6

Comment:

## *********** THIS IS NOT A BILL ***********

Deed          150.00
              0
              0

Total:        150.00

| Realty Transfer Stamp | Department of Real Estate Stamp |
|---|---|
| Affidavit Attached-No          Stamp Num-T12349 | Certified On/By-> 06-10-2014 / B  K |
| MCKEESPORT | |
| Ward-99-NO WARD | 0554E00225000000          0554E00233000000 |
| Value          100,000.00 | |
| | |
| Commonwealth of Pennsylvania        1,000.00 | |
| Munic-McKeesport City               1,500.00 | |
| School District-McKeesport Area       500.00 | |
| Munic-Penalty                           0.00 | |
| Munic-Interest                          0.00 | |
| School-Penalty                          0.00 | |
| School-Interest                         0.00 | |
| 3,000.00 | |

*I hereby certify that the within and foregoing was recorded in the Department of Real Estate in  Allegheny County, PA*

## **DO NOT REMOVE-THIS PAGE IS PART OF THE RECORDED DOCUMENT**

File Information:                          Record and Return To:

   Document Number: 2014-14938
   Receipt Number: 2650489                    AGS
   Recorded Date/Time: June 10, 2014 02:42:45P   WILL CALL
   Book-Vol/Pg: BK-DE VL-15627 PG-442        PITTSBURGH PA 15219
   User / Station: J Clark - Cash Station 25





EXHIBIT
B

*Jerry Tyre*

**Jerry Tyskiewicz, Acting Manager**
**Rich Fitzgerald, County Executive**

# *This Indenture*

MADE the     6th     day of    June      2014,

BETWEEN

          FESTIVAL FUN PARKS, LLC,

                                        (hereinafter called "Grantor")

                  AND

          MAYA RESTAURANTS, INC.

                                          (hereinafter called "Grantee")

WITNESSETH, That the said Grantor, in consideration of One Hundred Thousand And 00/100 Dollars ($100,000.00), paid to the Grantor by the Grantee, receipt of which is hereby acknowledged, does grant, bargain, sell and convey to the said Grantee, its successors and assigns

ALL that certain lot or piece of ground situate in the 12th Ward of the City of McKeesport, County of Allegheny and Commonwealth of Pennsylvania, being bounded and described as follows, to-wit:

BEGINNING at a point on the Easterly side of the Right of Way designated as Legislative Route 48, also known as Long Run Road, at the line dividing the property herein described from property now or formerly of COM Realty, Inc.; thence along the line dividing the property herein described from property now or formerly of COM Realty, Inc., North 51° 30' East, 260.50 feet to a point at the line dividing the property herein described from property now or formerly of C. S. Willis; thence along the line dividing the property herein described from property now or formerly of Willis, North 15° 09' 12" West, 189.29 feet to a point; thence continuing along the line dividing the property herein described from property now or formerly of Willis, South 51° 30' West, 42.61 feet to a point; thence continuing along the same, North 11° 46' West, 198.34 feet to a point at the line dividing the property herein described from property now or formerly of B. J. Kulasa; thence along the line dividing the property herein described from property now or formerly of Kulasa, South 51' 30" West, 259.06 feet to a point; thence South 51° 30' West, 40.94 feet to a point in the Right of Way designated as Legislative Route No. 48, also known as Long Run Road; thence by a line through the Right of Way designated as Legislative Route 48, also known as Long Run Road, South 23° 43' East, 95.81 feet to a point; thence continuing along the same, South 8° 00' East, 98.07 feet to a point; thence North 51° 30' West, 55.26 feet to a point; thence South 18° 31' 40" East, 184.91 feet to a point at the line dividing the property herein described from property now or formerly of COM Realty, Inc., the place of beginning.

THIS LEGAL DESCRIPTION was prepared in accordance with that certain Plan of Survey prepared by Liadis Engineering, Inc., dated April 25, 1994 and bearing drawing No. 16717-B.

BEING FURTHER DESIGNATED as Block and Lot Nos. 554-E-225 and 554-E-233 in the Deed Registry office of Allegheny County, Pennsylvania.

UNDER AND SUBJECT to reservations, restrictions, easements, rights of way, etc. as the same may appear in prior instruments of record.

BEING part of the same property which Festival Fun Parks, LLC acquired by Deed from Festival Fun Parks, LLC, a Delaware limited liability company, successor by merger to Sandcastle of Pennsylvania,

**NOTICE:** THE UNDERSIGNED, AS EVIDENCED BY THE SIGNATURE TO THIS NOTICE AND THE ACCEPTANCE AND RECORDING OF THIS DEED, IS FULLY COGNIZANT OF THE FACT THAT THE UNDERSIGNED MAY NOT BE OBTAINING THE RIGHT OF PROTECTION AGAINST SUBSIDENCE, AS TO THE PROPERTY HEREIN CONVEYED, RESULTING FROM COAL MINING OPERATIONS AND THAT THE PURCHASED PROPERTY, HEREIN CONVEYED, MAY BE PROTECTED FROM DAMAGE DUE TO MINE SUBSIDENCE BY A PRIVATE CONTRACT WITH THE OWNERS OF THE ECONOMIC INTEREST IN THE COLA. THIS NOTICE IS INSERTED HEREIN TO COMPLY WITH THE BITUMINOUS MINE SUBSIDENCE AND LAND CONSERVATION ACT OF 1966.

MAYA RESTAURANTS, INC.

By: _____

STATE OF Pennsylvania     }
                          } SS.
COUNTY OF Allegheny       }

On this, the 6th day of June, 2014, before me, a Notary Public, the undersigned officer, personally appeared Jerome Gibas, who acknowledged himself to be the General Manager (title) of Festival Fun Parks, LLC, and that he, as such officer, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the corporation by himself as such officer.

In witness whereof, I hereunto set my hand and official seal.

My commission expires:

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Nat C. Cohen, Notary Public
City of Pittsburgh, Allegheny County
My Commission Expires May 26, 2017
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

_____
Notary Public

_____
Title of Officer

CERTIFICATE OF RESIDENCE
*Tax Bills and Owner Mailing Address*

I hereby certify that the precise residence of the grantee, herein is ~~████████████████~~
2972 TRAFFORD ROAD MURRYSVILLE, PA 15668

_____
For Grantee'

Page 3 of 4

 **Duckstein Contracting Inc.**

17 Furnace St Ext
Mckees Rocks, Pa 15136
Ph # 412-331-6257
Fax # 412-331-8135
TAX ID # 25-1647126

Client:       PRASAD BANDHU WATER
Property:     623 LONG RUN ROAD
              WHITE OAK , PA

Operator:     NORM

Type of Estimate:   <NONE>
Date Entered:       4/29/2015                 Date Assigned:

Price List:         PAJO8X_APR15
Labor Efficiency:   Restoration/Service/Remodel
Estimate:           2015-04-29-1623





**Duckstein Contracting Inc.**

17 Furnace St Ext
Mckees Rocks, Pa 15136
Ph # 412-331-6257
Fax # 412-331-8135
TAX ID # 25-1647126

2015-04-29-1623

Main Level



FIN BASEMENT                                                          Height: 8'

813.33 SF Walls                          637.50 SF Ceiling
1450.83 SF Walls & Ceiling               637.50 SF Floor
70.83 SY Flooring                        101.67 LF Floor Perimeter
101.67 LF Ceil. Perimeter

| CAT | SEL | ACT DESCRIPTION | | | | | |
|-----|-----|------|------|------|------|------|------|
| | CALC | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
| 19. PLM | DRNFR | + Foundation drainage system - French drain | | | | | |
| | 1 | 1.00 LF | 0.00+ | 13.70 = | 0.79 | 2.90 | 17.39 |
| 4. EXC | GRAV+ | + Gravel under slab - in place | | | | | |
| | PF*2/27 | 7.53 CY | 0.00+ | 34.50 = | 15.48 | 55.06 | 330.33 |
| 6. CNC | CYMN | + Concrete CY - Minimum charge | | | | | |
| | 1 | 1.00 EA | 0.00+ | 503.67 = | 22.51 | 105.24 | 631.42 |
| 7. CNC | LAB | + Concrete Finisher - per hour | | | | | |
| | 16 | 16.00 HR | 0.00+ | 50.07 = | 0.00 | 160.22 | 961.34 |
| 8. CNC | LABL | + Concrete - General Laborer - per hour | | | | | |
| | 16 | 16.00 HR | 0.00+ | 28.47 = | 0.00 | 91.10 | 546.62 |
| 18. MPR | DMEM | + Waterproofing - sheet membrane | | | | | |
| | W | 813.33 SF | 0.00+ | 2.39 = | 47.82 | 398.34 | 2,390.02 |
| 9. FRM | J4SF | & R&R Joist - floor or ceiling - 2x4 - w/blocking - 16" oc | | | | | |
| | F | 637.50 SF | 0.42+ | 1.15 = | 22.76 | 204.74 | 1,228.38 |
| 82. WTR | GRM | + Apply anti-microbial agent | | | | | |
| | F | 637.50 SF | 0.00+ | 0.20 = | 12.16 | 25.76 | 165.42 |
| 11. FRM | SH3/4 | & R&R Sheathing - plywood - 3/4" CDX | | | | | |
| | F | 637.50 SF | 0.64+ | 1.82 = | 47.30 | 323.12 | 1,938.67 |
| 12. TIL | AV- | & R&R Ceramic tile - Standard grade | | | | | |
| | F | 637.50 SF | 1.71+ | 7.89 = | 117.81 | 1,247.56 | 7,485.38 |
| 15. FRM | 4SF | & R&R Stud wall - 2" x 4" - 16" oc | | | | | |
| | W | 813.33 SF | 0.21+ | 1.91 = | 44.41 | 353.74 | 2,122.41 |
| 16. PNL | AV+ | & R&R Paneling - High grade | | | | | |
| | 1/2W | 406.67 SF | 0.29+ | 2.53 = | 23.91 | 234.14 | 1,404.86 |
| 23. ACT | SG2+ | & R&R Suspended ceiling grid - High grade - 2' x 2' | | | | | |
| | C | 637.50 SF | 0.19+ | 1.42 = | 33.02 | 211.88 | 1,271.28 |
| 25. ACT | SG2 | & R&R Suspended ceiling grid - 2' x 2' | | | | | |
| | C | 637.50 SF | 0.19+ | 1.22 = | 24.10 | 184.60 | 1,107.58 |
| 30. ELE | LABL | + Electrician - General Laborer - per hour | | | | | |
| | 32 | 32.00 HR | 0.00+ | 28.47 = | 0.00 | 182.20 | 1,093.24 |

 **Duckstein Contracting Inc.**

17 Furnace St Ext
Mckees Rocks, Pa 15136
Ph # 412-331-6257
Fax # 412-331-8135
TAX ID # 25-1647126

### CONTINUED - FIN BASEMENT

| CAT | SEL CALC | ACT DESCRIPTION QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 28. ELE | LAB | + Electrician - per hour | | | | | |
| | 32 | 32.00 HR | 0.00+ | 64.55 = | 0.00 | 413.12 | 2,478.72 |
| 44. DOR | AV | & R&R Interior door unit | | | | | |
| | 2 | 2.00 EA | 17.83+ | 151.40 = | 13.64 | 70.42 | 422.52 |
| 48. PNT | DORS | + Stain & finish door slab only (per side) | | | | | |
| | 4 | 4.00 EA | 0.00+ | 32.64 = | 2.01 | 26.52 | 159.09 |
| 54. FNC | LAB | + Finish Carpenter - per hour | | | | | |
| | 16 | 16.00 HR | 0.00+ | 75.94 = | 0.00 | 243.00 | 1,458.04 |

REBUILD CENTER LIGHT FIXTURE AND CEILING TRAY  CONNECTED TO THE WALL FRAMING BEING REPLACED

| CAT | SEL CALC | ACT DESCRIPTION QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 56. DRY | 1/2++ | & R&R 1/2" drywall - hung, taped, with smooth wall finish | | | | | |
| | W | 813.33 SF | 0.40+ | 1.91 = | 26.76 | 381.12 | 2,286.67 |
| 58. PNT | SP2 | + Seal/prime then paint the walls and ceiling twice (3 coats) | | | | | |
| | WC | 1450.83 SF | 0.00+ | 0.71 = | 24.37 | 210.90 | 1,265.36 |
| 79. PNT | PNLS | + Stain & finish paneling | | | | | |
| | 1/2W | 406.67 SF | 0.00+ | 0.94 = | 7.97 | 78.06 | 468.30 |
| 80. FNC | CHR+ | & R&R Chair rail - 2 1/2" stain grade | | | | | |
| | PF | 101.67 LF | 0.40+ | 3.16 = | 10.89 | 74.58 | 447.42 |
| 81. PNT | CHRS | + Stain & finish chair rail | | | | | |
| | PF | 101.67 LF | 0.00+ | 0.86 = | 1.21 | 17.72 | 106.37 |
| 61. MSD | AV- | & R&R Mirror - 1/8" plate glass | | | | | |
| | 1/2W | 406.67 SF | 0.26+ | 10.47 = | 129.24 | 898.54 | 5,391.34 |
| 71. FNC | B4 | & R&R Baseboard - 4 1/4" | | | | | |
| | PF | 101.67 LF | 0.44+ | 3.79 = | 13.59 | 88.72 | 532.37 |
| 72. PNT | BS | + Stain & finish baseboard | | | | | |
| | PF | 101.67 LF | 0.00+ | 0.86 = | 1.21 | 17.72 | 106.37 |
| 73. INS | BI8 | & R&R Blown-in insulation - 8" depth - R19 | | | | | |
| | C | 637.50 SF | 0.73+ | 0.68 = | 15.62 | 182.90 | 1,097.40 |
| 75. LIT | FNL+ | & R&R Ceiling fan & light - High grade | | | | | |
| | 1 | 1.00 EA | 17.96+ | 321.95 = | 13.93 | 70.78 | 424.62 |
| 76. DMO | LAB | - General Demolition - per hour | | | | | |
| | 32 | 32.00 HR | 47.57+ | 0.00 = | 0.00 | 304.44 | 1,826.68 |

DEMO AND DEBRIS HANDELING

| CAT | SEL CALC | ACT DESCRIPTION QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|---|
| 77. DMO | BARR | - Dust control barrier per square foot | | | | | |
| | 120 | 120.00 SF | 0.59+ | 0.00 = | 0.50 | 14.26 | 85.56 |
| 78. DMO | BARRP | - Dust control barrier - tension post - per day | | | | | |
| | 6 | 6.00 DA | 3.30+ | 0.00 = | 0.00 | 3.96 | 23.76 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Totals: FIN BASEMENT | | | | | 673.01 | 6,877.36 | 41,274.93 |



## Duckstein Contracting Inc.

17 Furnace St Ext
Mckees Rocks, Pa 15136
Ph # 412-331-6257
Fax # 412-331-8135
TAX ID # 25-1647126



**Bathroom**                                                                 Height: 8'

272.00 SF Walls                          71.81 SF Ceiling
343.81 SF Walls & Ceiling                71.81 SF Floor
7.98 SY Flooring                         34.00 LF Floor Perimeter
34.00 LF Ceil. Perimeter

| CAT | SEL | ACT DESCRIPTION | | | | | |
|-----|-----|------|--------|---------|-----|-----|-------|
| | CALC | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
| 31. PLM | DRNFR | ÷ Foundation drainage system - French drain | | | | | |
| | 1 | 1.00 LF | 0.00+ | 13.70 = | 0.79 | 2.90 | 17.39 |
| 32. EXC | GRAV+ | ÷ Gravel under slab - in place | | | | | |
| | PF*2/27 | 2.52 CY | 0.00+ | 34.50 = | 5.18 | 18.42 | 110.54 |
| 33. CNC | CYMN | ÷ Concrete CY - Minimum charge | | | | | |
| | 1 | 1.00 EA | 0.00+ | 503.67 = | 22.51 | 105.24 | 631.42 |
| 34. CNC | LAB | ÷ Concrete Finisher - per hour | | | | | |
| | 32 | 32.00 HR | 0.00+ | 50.07 = | 0.00 | 320.44 | 1,922.68 |
| 35. CNC | LABL | ÷ Concrete - General Laborer - per hour | | | | | |
| | 16 | 16.00 HR | 0.00+ | 28.47 = | 0.00 | 91.10 | 546.62 |
| 36. MPR | DMEM | ÷ Waterproofing - sheet membrane | | | | | |
| | W | 272.00 SF | 0.00+ | 2.39 = | 15.99 | 133.22 | 799.29 |
| 37. FRM | J4SF | & R&R Joist - floor or ceiling - 2x4 - w/blocking - 16" oc | | | | | |
| | F | 71.81 SF | 0.42+ | 1.15 = | 2.56 | 23.08 | 138.38 |
| 38. FRM | SH3/4 | & R&R Sheathing - plywood - 3/4" CDX | | | | | |
| | F | 71.81 SF | 0.64+ | 1.82 = | 5.33 | 36.40 | 218.38 |
| 39. TIL | AV- | & R&R Ceramic tile - Standard grade | | | | | |
| | F | 71.81 SF | 1.71+ | 7.89 = | 13.27 | 140.54 | 843.19 |
| 40. FRM | 4SF | & R&R Stud wall - 2" x 4" - 16" oc | | | | | |
| | W | 272.00 SF | 0.21+ | 1.91 = | 14.85 | 118.30 | 709.79 |
| 41. PNL | AV+ | & R&R Paneling - High grade | | | | | |
| | 1/2W | 136.00 SF | 0.29+ | 2.53 = | 8.00 | 78.30 | 469.82 |
| 42. ACT | SG2+ | & R&R Suspended ceiling grid - High grade - 2' x 2' | | | | | |
| | C | 71.81 SF | 0.19+ | 1.42 = | 3.72 | 23.86 | 143.19 |
| 43. ACT | SG2 | & R&R Suspended ceiling grid - 2' x 2' | | | | | |
| | C | 71.81 SF | 0.19+ | 1.22 = | 2.71 | 20.78 | 124.74 |
| 52. PLM | LAB | ÷ Plumber - per hour | | | | | |
| | 24 | 24.00 HR | 0.00+ | 68.35 = | 0.00 | 328.08 | 1,968.48 |
| REMOVE RESET PLUMBING | | | | | | | |
| 53. PLM | LABL | ÷ Plumber - General Laborer - per hour | | | | | |
| | 24 | 24.00 HR | 0.00+ | 28.47 = | 0.00 | 136.66 | 819.94 |
| 69. FNC | B4 | & R&R Baseboard - 4 1/4" | | | | | |
| | PF | 34.00 LF | 0.44+ | 3.79 = | 4.55 | 29.70 | 178.07 |

 **Duckstein Contracting Inc.**

17 Furnace St Ext
Mckees Rocks, Pa 15136
Ph # 412-331-6257
Fax # 412-331-8135
TAX ID # 25-1647126

CONTINUED - Bathroom

| CAT | SEL | ACT DESCRIPTION | | | | | |
|---|---|---|---|---|---|---|---|
| | | CALC | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
| 70. PNT | BS | | ÷ Stain & finish baseboard | | | | | |
| | | PF | 34.00 LF | 0.00+ | 0.86 = | 0.40 | 5.92 | 35.56 |
| 84. WTR | GRM | | ÷ Apply anti-microbial agent | | | | | |
| | | F | 71.81 SF | 0.00+ | 0.20 ≈ | 1.37 | 2.92 | 18.65 |

| Totals: Bathroom | 101.23 | 1,615.86 | 9,696.13 |
|---|---|---|---|

| Total: Main Level | 774.24 | 8,493.22 | 50,971.06 |
|---|---|---|---|

GENERAL

| CAT | SEL | ACT DESCRIPTION | | | | | |
|---|---|---|---|---|---|---|---|
| | | CALC | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
| 50. DMO | DTRUCK | | - Single axle dump truck - per load - including dump fees | | | | | |
| | | 1 | 1.00 EA | 244.24+ | 0.00 = | 0.00 | 48.84 | 293.08 |
| 51. DMO | DUMP> | | - Dumpster load - Approx. 30 yards, 5-7 tons of debris | | | | | |
| | | 1 | 1.00 EA | 671.00+ | 0.00 = | 0.00 | 134.20 | 805.20 |
| 55. FEE | TIPF | | + Taxes, insurance, permits & fees (Bid item) COMMERCIAL BUILDING PERMIT COST ALLOWANCE | | | | | |
| | | 1 | 1.00 EA   [*] | 0.00+ | 1,500.00 = | 0.00 | 300.00 | 1,800.00 |
| 85. LAB | SUPERC | | + Commercial Supervision / Project Management - per hour | | | | | |
| | | 40 | 40.00 HR | 0.00↓ | 59.37 = | · | 0.00 | 474.96 | 2,849.76 |

| Totals: GENERAL | 0.00 | 958.00 | 5,748.04 |
|---|---|---|---|

Labor Minimums Applied

| CAT | SEL | ACT DESCRIPTION | | | | | |
|---|---|---|---|---|---|---|---|
| | | CALC | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
| 5. EQU | MN-A | | + Heavy equipment labor minimum | | | | | |
| | | 1 | 1.00 EA | 0.00+ | 72.02 = | 0.00 | 14.40 | 86.42 |

| Totals: Labor Minimums Applied | 0.00 | 14.40 | 86.42 |
|---|---|---|---|

| Line Item Totals: 2015-04-29-1623 | 774.24 | 9,465.62 | 56,805.52 |
|---|---|---|---|

 **Duckstein Contracting Inc.**

17 Furnace St Ext
Mckees Rocks, Pa 15136
Ph # 412-331-6257
Fax # 412-331-8135
TAX ID # 25-1647126

## Grand Total Areas:

| | | |
|---|---|---|
| 1,602.67 SF Walls | 837.64 SF Ceiling | 2,440.31 SF Walls and Ceiling |
| 837.64 SF Floor | 93.07 SY Flooring | 200.33 LF Floor Perimeter |
| 0.00 SF Long Wall | 0.00 SF Short Wall | 200.33 LF Ceil. Perimeter |

| | | |
|---|---|---|
| 837.64 Floor Area | 891.92 Total Area | 1,602.67 Interior Wall Area |
| 1,110.00 Exterior Wall Area | 123.33 Exterior Perimeter of Walls | |

| | | |
|---|---|---|
| 0.00 Surface Area | 0.00 Number of Squares | 0.00 Total Perimeter Length |
| 0.00 Total Ridge Length | 0.00 Total Hip Length | |

 **Duckstein Contracting Inc.**

17 Furnace St Ext
Mckees Rocks, Pa 15136
Ph # 412-331-6257
Fax # 412-331-8135
TAX ID # 25-1647126

## Summary

| | |
|---|---:|
| Line Item Total | 46,565.66 |
| Material Sales Tax | 760.71 |
| Cleaning Mtl Tax | 1.49 |
| Subtotal | 47,327.86 |
| Overhead | 4,732.81 |
| Profit | 4,732.81 |
| Cleaning Sales Tax | 12.04 |
| Replacement Cost Value | $56,805.52 |
| Net Claim | $56,805.52 |

2015-04-29-1623

8/14/2015     Page: 7

 **Duckstein Contracting Inc.**

17 Furnace St Ext
Mckees Rocks, Pa 15136
Ph # 412-331-6257
Fax # 412-331-8135
TAX ID # 25-1647126

### Recap of Taxes, Overhead and Profit

| | Overhead (10%) | Profit (10%) | Material Sales Tax (7%) | Cleaning Mtl Tax (7%) | Cleaning Sales Tax (7%) | Clothing Acc Tax (7%) | Manuf. Home Tax (7%) | Storage Rental Tax (7%) |
|---|---|---|---|---|---|---|---|---|
| **Line Items** | | | | | | | | |
| | 4,732.81 | 4,732.81 | 760.71 | 1.49 | 12.04 | 0.00 | 0.00 | 0.00 |
| **Total** | | | | | | | | |
| | 4,732.81 | 4,732.81 | 760.71 | 1.49 | 12.04 | 0.00 | 0.00 | 0.00 |

 **Duckstein Contracting Inc.**

17 Furnace St Ext
Mckees Rocks, Pa 15136
Ph # 412-331-6257
Fax # 412-331-8135
TAX ID # 25-1647126

## Recap by Room

Estimate: 2015-04-29-1623

Area: Main Level

| | | |
|---|---:|---:|
| FIN BASEMENT | 33,724.56 | 72.42% |
| Bathroom | 7,979.04 | 17.14% |
| Area Subtotal: Main Level | 41,703.60 | 89.56% |
| GENERAL | 4,790.04 | 10.29% |
| Labor Minimums Applied | 72.02 | 0.15% |
| Subtotal of Areas | 46,565.66 | 100.00% |
| Total | 46,565.66 | 100.00% |

 **Duckstein Contracting Inc.**

17 Furnace St Ext
Mckees Rocks, Pa 15136
Ph # 412-331-6257
Fax # 412-331-8135
TAX ID # 25-1647126

## Recap by Category

| O&P Items | Total | % |
|---|---:|---:|
| ACOUSTICAL TREATMENTS | 1,872.58 | 3.30% |
| CONCRETE & ASPHALT | 4,321.74 | 7.61% |
| GENERAL DEMOLITION | 6,198.13 | 10.91% |
| DOORS | 302.80 | 0.53% |
| DRYWALL | 1,553.46 | 2.73% |
| ELECTRICAL | 2,976.64 | 5.24% |
| EQU | 72.02 | 0.13% |
| EXCAVATION | 346.73 | 0.61% |
| | 1,500.00 | 2.64% |
| FINISH CARPENTRY / TRIMWORK | 2,050.51 | 3.61% |
| FRAMING & ROUGH CARPENTRY | 4,179.63 | 7.36% |
| INSULATION | 433.50 | 0.76% |
| LABOR ONLY | 2,374.80 | 4.18% |
| LIGHT FIXTURES | 321.95 | 0.57% |
| MOISTURE PROTECTION | 2,593.94 | 4.57% |
| MIRRORS & SHOWER DOORS | 4,257.83 | 7.50% |
| PLUMBING | 2,351.08 | 4.14% |
| PANELING & WOOD WALL FINISHES | 1,372.96 | 2.42% |
| PAINTING | 1,747.04 | 3.08% |
| TILE | 5,596.46 | 9.85% |
| WATER EXTRACTION & REMEDIATION | 141.86 | 0.25% |
| O&P Items Subtotal | 46,565.66 | 81.97% |
| Material Sales Tax | 760.71 | 1.34% |
| Cleaning Mtl Tax | 1.49 | 0.00% |
| Overhead | 4,732.81 | 8.33% |
| Profit | 4,732.81 | 8.33% |
| Cleaning Sales Tax | 12.04 | 0.02% |
| Total | 56,805.52 | 100.00% |



Main Level

Page: 11

8/14/2015

Main Level

2015-04-29-1623

 **Duckstein Contracting Inc.**

*Duckstein Restoration*
*17 Furnace St. Ext*
*McKees Rocks, PA 15136*
*Phone: 412-331-6257*
*Fax :412-331-8135*
*Email: ashley@ducksteinmail.com*
*Tax ID#: 25-1647126*

Client:   FRENCH DRAIN

Operator:   NORM

Type of Estimate:   <NONE>
Date Entered:   10/9/2015                    Date Assigned:

Price List:   PAPB8X_OCT15
Labor Efficiency:   Restoration/Service/Remodel
Estimate:   2015-10-09-1640

THIS IS A ROUGH ESTIMATE TO INSTALL A 6" FRENCH DRAIN BEHIND THE BUILDING. TO EXTEND THE
DRAIN PAST THE BUILDING. TIE IN TO EXISTING STORM SEWER IF AVAILABLE
PERMITS AND TIE IN FEE IF ANY ARE NOT INCLUDED
EXCAVATION [AND BACK-FILL ARE]LINITED TO 80 HOURS.. IF EXCAVATION TIME RUNS OVER 80 HOURS
(DUE TO ANY REASON INCLUDING ROCK OR EARTH CONDITIONS) THE ADDITIONAL TIME WILL BE AN
ADDITIONAL COST
BASED ON THE SAME RATES AS HERE.   IF ADDITIONAL MATERIALS ARE NEEDED THE ADDITIONAL
*MATERIALS WILL BE CHARGED AT THE SAME RATE AS HERE*

 **Duckstein Contracting Inc.**

*Duckstein Restoration*
17 Furnace St. Ext
McKees Rocks, PA 15136
Phone: 412-331-6257
Fax :412-331-8135
Email: ashley@ducksteinmail.com
Tax ID#: 25-1647126

2015-10-09-1640

2015-10-09-1640

| CAT | SEL | ACT DESCRIPTION | | | | | |
|---|---|---|---|---|---|---|---|
| | | CALC | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
| 10. CNC | ASPSC | + Asphalt cutting - driveway (per LF per inch of saw depth) | | | | | |
| | | 0.00 LF | | | 0.00 | 0.00 | 0.00 |

| Total: 2015-10-09-1640 | | | | | 0.00 | 0.00 | 0.00 |

## EXTERIOR REAR

| CAT | SEL | ACT DESCRIPTION | | | | | |
|---|---|---|---|---|---|---|---|
| | | CALC | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
| 1. EXC | BHOE | + Backhoe loader and operator | | | | | |
| | | 80 | 80.00 HR | 0.00+ | 81.29 = | 0.00 | 1,300.64 | 7,803.84 |
| *TRENCH ACROSS REAR OF BUILDING TO CATCH BASIN* | | | | | | | |
| 2. FEE | DEL | + Delivery charge (Bid item) | | | | | |
| | | 2 | 2.00 EA [*] | 0.00+ | 450.00 = | 0.00 | 180.00 | 1,080.00 |
| *EXCAVATION EQUIPMENT DELIVERY AND REMOVAL* | | | | | | | |
| 3. EXC | GRAV | + Gravel (per CY) | | | | | |
| | | 166 | 166.00 CY | 0.00+ | 26.27 = | 305.26 | 933.22 | 5,599.30 |
| *GRAVEK FOR FRENCH DRAIN* | | | | | | | |
| 4. LND | DPC | M (Material Only) Drain pipe - corrugated 6 | | | | | |
| | | 900 | 900.00 LF | 0.00+ | 3.65 = | 229.95 | 703.00 | 4,217.95 |
| *FRENCH DRAIN PIPE* | | | | | | | |
| 5. LAB | LBR | + General Laborer - per hour | | | | | |
| | | 3*80 | 240.00 HR | 0.00+ | 28.75 = | 0.00 | 1,380.00 | 8,280.00 |
| *INSTALL PIPE, TAMP GRAVEL AND GROUND* | | | | | | | |
| 6. EQU | DTRUK | + Dump truck and operator - 10 ton | | | | | |
| | | 48 | 48.00 HR | 0.00+ | 75.00 = | 0.00 | 720.00 | 4,320.00 |
| *ASPHALY AND DEBRIS* | | | | | | | |
| | | + Asphalt paving - 2 1/2 - 3" with 6" base - Commercial | | | | | |
| | | 2700 | 2700.00 SF | 0.00+ | 5.46 = | 440.37 | 3,036.48 | 18,218.85 |
| *OVED FOR DRAIN LINE* | | | | | | | |
| | | + Asphalt cutting - driveway (per LF per inch of saw depth) | | | | | |
| | | 3600.00 LF | | 0.00+ | 2.34 = | 0.00 | 1,684.80 | 10,108.80 |
| *BOTH SIDES OF TRENCH* | | | | | | | |
| | | + Rental equipment delivery (Bid item) back fill compactor | | | | | |
| | | 1.00 EA [*] | | 0.00+ | 1,850.00 = | 0.00 | 370.00 | 2,220.00 |
| *TAMPER* | | | | | | | |

11/9/2015          Page: 2

 **Duckstein Contracting Inc.**

Duckstein Restoration
17 Furnace St. Ext
McKees Rocks, PA 15136
Phone: 412-331-6257
Fax :412-331-8135
Email: ashley@ducksteinmail.com
Tax ID#: 25-1647126

### CONTINUED - EXTERIOR REAR

| CAT | SEL CALC | ACT QTY | DESCRIPTION | REMOVE | REPLACE | TAX | O&P | TOTAL |
|-----|----------|---------|-------------|--------|---------|-----|-----|-------|
| Totals: EXTERIOR REAR | | | | | | 975.58 | 10,308.14 | 61,848.74 |
| Line Item Totals: 2015-10-09-1640 | | | | | | 975.58 | 10,308.14 | 61,848.74 |



11/9/2015          Page: 3

**Scanned by CamScanner**

 **Duckstein Contracting Inc.**

Duckstein Restoration
17 Furnace St. Ext
McKees Rocks, PA 15136
Phone: 412-331-6257
Fax :412-331-8135
Email: ashley@ducksteinmail.com
Tax ID#: 25-1647126

## Summary

| | |
|---|---:|
| Line Item Total | 50,565.02 |
| Material Sales Tax | 975.58 |
| Subtotal | 51,540.60 |
| Overhead | 5,154.07 |
| Profit | 5,154.07 |
| Replacement Cost Value | $61,848.74 |
| Net Claim | $61,848.74 |



11/9/2015          Page: 4

**Scanned by CamScanner**

 **Duckstein Contracting Inc.**

Duckstein Restoration
17 Furnace St. Ext
McKees Rocks, PA 15136
Phone: 412-331-6257
Fax :412-331-8135
Email: ashley@ducksteinmail.com
Tax ID#: 25-1647126

### Recap of Taxes, Overhead and Profit

| | Overhead (10%) | Profit (10%) | Material Sales Tax (7%) | Cleaning Mtl Tax (7%) | Cleaning Sales Tax (7%) | Clothing Acc Tax (7%) | Manuf. Home Tax (7%) | Storage Rental Tax (7%) |
|---|---|---|---|---|---|---|---|---|
| Line Items | | | | | | | | |
| | 5,154.07 | 5,154.07 | 975.58 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Total | | | | | | | | |
| | 5,154.07 | 5,154.07 | 975.58 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

Scanned by CamScanner

 **Duckstein Contracting Inc.**

Duckstein Restoration
17 Furnace St. Ext
McKees Rocks, PA 15136
Phone: 412-331-6257
Fax :412-331-8135
Email: ashley@ducksteinmail.com
Tax ID#: 25-1647126

## Recap by Room

Estimate: 2015-10-09-1640

| | | |
|---|---|---|
| EXTERIOR REAR | 50,565.02 | 100.00% |
| Subtotal of Areas | 50,565.02 | 100.00% |
| Total | 50,565.02 | 100.00% |

2015-10-09-1640

Scanned by CamScanner

 **Duckstein Contracting Inc.**

Duckstein Restoration
17 Furnace St. Ext
McKees Rocks, PA 15136
Phone: 412-331-6257
Fax :412-331-8135
Email: ashley@ducksteinmail.com
Tax ID#: 25-1647126

## Recap by Category

| O&P Items | Total | % |
|---|---|---|
| CONCRETE & ASPHALT | 23,166.00 | 37.46% |
| HEAVY EQUIPMENT | 5,450.00 | 8.81% |
| EXCAVATION | 10,864.02 | 17.57% |
| PERMITS AND FEES | 900.00 | 1.46% |
| LABOR ONLY | 6,900.00 | 11.16% |
| LANDSCAPING | 3,285.00 | 5.31% |
| O&P Items Subtotal | 50,565.02 | 81.76% |
| Material Sales Tax | 975.58 | 1.58% |
| Overhead | 5,154.07 | 8.33% |
| Profit | 5,154.07 | 8.33% |
| Total | 61,848.74 | 100.00% |

2015-10-09-1640

**Scanned by CamScanner**



# SOMMER
## LAW GROUP, PC

6 Market Square
Pittsburgh, PA 15222

(p) 412-471-1266     (f) 412-471-3175
www.SommerLawGroup.com

**BRAD N. SOMMER, ESQUIRE**
Email: BNS@SommerLawGroup.com

December 7, 2015

**Via Email: jdipaolo@dipaolo-russo.com**
DiPaolo & Russo
Attn: Joseph DiPaolo, Esquire
1106 Fifth Avenue
Pittsburgh, PA 15219

**Via Email: cpflug@palaceentertainment.com**
Palace Entertainment
Attn: Christopher R. Pflug
4590 MacArthur Blvd- Suite 400
Newport Beach, CA 92660

RE:     *Our Client: Maya Restaurants, Inc*
*Property Address: 823 Long Run Road*
*Confidential Settlement Discussions*

Dear Mr. DiPaolo and Mr. Pflug:

Please be advised that my office has been retained by Maya Restaurants, Inc with respect to its purchase of 823 Long Run Road, McKeesport, PA from Festival Fun Parks, LLC.

While I understand that you have made demands on my client for payment under the $50,000.00 Mortgage/Note secured on this transaction, my client is rejecting performance under said agreement due to a claim of Fraud in the Inducement and Breach of Contract by Festival Fun Parks, LLC due to misrepresenting property defects under contract provision 12(A) Property Defects Disclosure. More specifically, the property contains defects which are covered under "wetlands, flood plains, or any other environmentally sensitive areas."

As a result of the failure to disclose this defective condition, my client has incurred substantial property damages to cure and re-mediate, which is included in the estimates of Duckstein Contracting provided herewith. Based upon information and belief, your client knew or should have known of said defects, and intentionally failed to disclose the same inducing my client to proceed with the purchase. Had my client been aware of the true condition, my client would not have entered into the agreement to purchase.

At this time, and due to the fact these figures are in excess of the purchase price, my client has authorized me to demand refund of all monies paid at closing, along with a release/satisfaction of the Mortgage secured on the property, in exchange for a full release of all claims. This demand shall remain open for five (5) days.

**EXHIBIT**

**D**

If we are unable to reach an amicable settlement, I have been instructed to proceed with litigation, in which we will be demanding the full refund of all contractor costs, lost income/use of property, legal fees and punitive damages.

Your consideration is appreciated.

Very truly yours,

BRAD N. SOMMER

BNS/hlw
Enclosures

# EXHIBIT 2

# Executive Business & Marketing Plan

## FOR



## Location:   623 Long Run Rd.
## McKeesport PA 15132

**CONTACT INFORMATION:**
Prasad Margabandhu
5 Market Sq, Pittsburgh PA 15222
HOME PHONE:  412-607-7675
EMAIL:  prasadbandhu@gmail.com

1

## I.    TABLE OF CONTENTS

Executive Summary ........................................................................................3

Background & Description.................................................................................5

Business Overview ...........................................................................................6
   History..................................................................................6
   Mission .................................................................................7
   Goals and Objectives............................................................7

Management and Organization.........................................................................7-8
   Organization Structure and Staffing.....................................7
   Management Team................................................................7
   New Hires & Job Creation ...................................................7
   Labor market Issues.............................................................7

Operational Plan...............................................................................................8
   Location and facilities ..........................................................8
   Hours of Operation...............................................................8
   Systems and Controls ..........................................................8
   Implementation Activities and Milestones............................8

Industrial Analysis............................................................................................9

Marketing & Promotion ....................................................................................10-11
   Products and Services...........................................................10
   Market Demographics ..........................................................10
   Promotion & Marketing Plan ...............................................11

Analysis of the Competition .............................................................................12
   Competitive Strategy............................................................13

Equipment List & Valuation .............................................................................14

Startup Costs & Financial Plan .........................................................................15-18
   Startup Expenses .................................................................15
   Profit Projection for current year (2008)..............................16
   Projected Loan Amortization Schedule ................................17
   Break Even Analysis............................................................18

Appendix 1, Resume of Prasad Margabandhu ...................................................19

# II.   Executive Summary

Winghart's Burger Bar is a Pittsburgh based local restaurant chain with top quality food and excellent burgers in the region. The Winghart's concept consists of fresh quality flood which is not frozen or microwaved and made fresh daily.  We can proudly state that to all our customers.

Winghart's is rated as the best Burgers in Pittsburgh and surrounding region

Winghart's started out in 2011 at Market Sq location and currently expanded to 5 locations : Market Sq, Southside, Monroeville, Greensburg and Oakland.

The following are some links and articles:

http://www.winghartburgers.com/

http://www.post-gazette.com/pg/11048/1125902-440.stm

http://www.pittsburghmagazine.com/Pittsburgh-Magazine/March-2011/Winghart-039s-Burger-amp-Whiskey-Bar/

http://www.post-gazette.com/pg/11097/1137439-46.stm

http://www.burghgourmand.com/2011/04/recent-eats-in-pittsburgh.html

http://chowhound.chow.com/topics/759148

http://networkedblogs.com/esogH

http://www.yelp.com/biz/wingharts-burger-and-whiskey-bar-pittsburgh

http://www.urbanspoon.com/r/23/1567626/restaurant/Downtown-CBD/Wingharts-Burger-Whiskey-Bar-Pittsburgh

http://www.yelp.com/biz/wingharts-burger-and-whiskey-bar-pittsburgh

https://twitter.com/wingharts

https://www.facebook.com/Wingharts

http://www.urbanspoon.com/r/23/1567626/restaurant/Downtown-CBD/Wingharts-Burger-Whiskey-Bar-Pittsburgh

Wingharts is looking to add another location with a more expansive menu at the 623 Long Run Rd building in Mckeesport. This building has a history of being a restaurant and was last used as a banquet hall facility. This building is ideal with over 25,000 square footage of space and parking for over 400 vehicles. The building also has a 10,000 square footage main kitchen and prep kitchen with another 3000 sf in storage.

Hence Winghart's plans to also start catering and doing events and banquets and possibly weddings too at this location. Also, due to Wingharts growth and increase in demand, Wingharts will be moving it's prep kitchen which consist of 12 employees to Mckeesport location as the location has 2 kitchens and the rear larger kitchen will be converted into prep kitchen.

Hence in a nutshell, we can state that the benefits and advantages in moving into this location:

1. Full Service Wingharts location with more enhanced menu as space allows.
2. Winghart's catering business for events and banquets.
3. Potential wedding catering as Stratwood did
4. Larger Prep Kitchen to handle the expansion and growth of Winghart's.

The combination of all above features will enable us to capitalize on every angle of sales. We will be different from the competition as there is no other location in the area with a concept any where similar to ours. This location should do high volume.

Prasad Marugabandhu, a resident of Pittsburgh, PA and alumni of Carnegie Mellon University, plans on reopening the space proposed above. Prasad is an entrepreneur who runs and operates several fast food restaurants, convenience stores and stations and an investor of real estate.

The current projections show that the store should do a total in sales in excess of 3 **million dollars** per year with the creation of **20 full time** and **50 part time** positions. The restaurant will be running about 16 hours a day and the prep Kitchen will be running 24 hours a day to keep up with volume. The location includes the following items:

- 2 full service bars, with draft tap system,
- A full kitchen,
- Restaurant sitting area on 1st floor
- lounge section on 1st floor
- Banquet Hall Section on 2nd floor
- A full service Prep Kitchen for preparation of all burger patties, sauces etc for Winghart's
- Parking and Kitchen access for all Wingharts delivery vehicles and supplier vehicles

4

# III.  Background & Description

Mckeesport is located in west Pennsylvania. Mckeesport is between the Allegheny, Westmoreland county. Mckeesport has 5.04 square miles of land area and 0.37 square miles of water area. As of 2010, the total Mckeesport population is 19,731, which has shrunk 17.92% since 2000. The population growth rate is much lower than the state average rate of 3.43% and is much lower than the national average rate of 9.71%. Mckeesport median household income is $26,608 in 2008-2012 and has grown by 12.20% since 2000. The income growth rate is much lower than the state average rate of 30.32% and is much lower than the national average rate of 26.32%. Mckeesport median house value is $47,800 in 2008-2012 and has grown by 26.46% since 2000. The house value growth rate is much lower than the state average rate of 70.00% and is much lower than the national average rate of 51.67%. As a reference, the national Consumer Price Index (CPI) inflation rate for the same period is 26.63%. On average, the public school district that covers Mckeesport is worse than the state average in quality. The

Plan is to purchase the existing building which was the old Stratwood Banquest Hall Facility and open it as the Winghart's. Our location is on prime part of Mckeesport right across from the largest shopping center in that area called Olympia Shopping center. Winghart's will also be located right across this shopping center .

The Olympia Shopping Center is Located on Rt. 48 near the intersection of Rt. 148 and is a well established community center with population within a 3-mile radius of 51,537 and within a 5-mile radius of 110,527. Some major tenants include: Shop 'n Save, National City Bank, Save-A-Lot, GNC, Fashion Bug, Hallmark, Family Dollar, Radio Shack, Payless Shoes, KFC, and many more.



In addition, Prasad has taken executive MBA courses and entrepreneurial courses at the Tepper Business School, Carnegie Mellon University. Prasad has also taken startup companies live and was CEO for 2 startup companies. Prasad got into the fast food restaurant and convenience store business and has been very successful.  In addition to his business experience, Prasad is also an adjunct professor at Penn State University. Prasad brings the education, management experience, entrepreneurial ability and ambition necessary to make this location a great success.

# IV.   BUSINESS OVERVIEW

HISTORY
This location was always a restaurant and bar.  It was last a banquet hall restaurant
facility and prior a well known restaurant called Lemontree. The location will need to be
reopened as a Winghart's restaurant, bar and lounge to maximize the sales.

MISSION
The mission of this business is to bring customers into our store, get them to buy food,
Beverages and have a great time at the location so that they on a day to day basis, try our
products and enjoy the experience, and keep them coming back as well as spread a good
word to all their friends.  In other words we want to make potential customers aware of
our location and menu and give them great service when they come in.

GOALS AND OBJECTIVES
The number one of goal of this business is to earn a profit consistently and to maximize it
and exceed the existing competition in the region.  This will happen with superior
customer service to keep customers coming back, maximizing worker productivity with
friendly, honest, and reliable employees, minimizing overhead, responding to changing
markets, creative and optimized marketing / promotion and competent management.  The
second goal is to increase the overall store revenue and profit earned. An ideal plan is to
increase sales by 25% within 2 to 3 years. The goals are very achievable as the store is
not optimally operated and the current store owner does not run the day to day operations
efficiently and has very high priced product that will not sell in this depressed economy.
Our plan is to very closely be involved in the operations and day-to-day operations of the
store and do aggressive marketing to increase awareness and bring more customers. The
plan is to visit the store on a daily basis and have monitoring systems to view customer
service and employee loyalty.

The businesses plans and goals fit into the owner's vision of creating more jobs and
stimulating the same economy that has provided the education and life to Prasad.

# V.  MANAGEMENT & ORGANIZATION

<u>ORGANIZATION STRUCTURE & STAFFING</u>
This business will be owned and operated by WINGHART'S SIX INC, a corporation owned by Prasad Margabandhu and Sivram Bandhu . Prasad will oversee the vision and operations of the business and will have a well qualified team of people to run the store's day to day operations. Sivram Bandhu will be in charge of operations and business development. Sivram has strong background in operations. A minimum of 20 full time and 50 part time positions will be created for the restaurant / banquet hall and a total of 12 jobs will be brought into the region for the prep kitchen.

<u>MANAGEMENT TEAM</u>
Prasad Margabandhu will oversee the store operations and will visit the store on a regular basis. The store's general manager will perform the day-to-day operations. There will also be multiple bar and restaurant managers and assistant managers and well as bar tenders, waiters, and maintenance people on staff. Prasad Margabandhu will be involved in developing the marketing and promotion plan and implementing the plan as well as developing the partnerships and relationships with the businesses, schools and community around the business

Prasad's resume is attached in the appendix.

<u>NEW HIRES & JOB CREATION</u>

The following table lists the new job positions with the number of positions for each title

|   | Job Title | Position | Quantity |
|---|-----------|----------|----------|
|   |           |          |          |
| 1 | General Manager | FULL | 3 |
| 2 | Restaurant & Bar Manager | FULL | 5 |
| 3 | Assistant Manager | FULL | 4 |
| 4 | Head Chef | FULL | 1 |
| 5 | Assistant Chef | FULL | 4 |
| 6 | Head Server | FULL | 2 |
| 7 | Servers | PART Time | 24 |
| 8 | Bar tenders | PART Time | 12 |
| 9 | Security Police | PART Time | 2 |
| 10 | Security | PART Time | 5 |
| 11 | Janitors | PART Time | 3 |
| 12 | Stock Assistants | PART Time | 2 |
| 13 | Marketing & Social Media / Customer Relations | FULL | 1 |

## LABOR MARKET ISSUES

With the exception of management, the stores staff members will be low-skilled workers and some local high school students.  Pittsburgh has a moderate unemployment rate and there is an abundance of potential employees wanting to go to work.  There are always more applicants than positions to fill in Pittsbugh.

In an effort to attract a larger pool of potential employees and more quality workers the business will offer a starting wage of $0.50 above normal minimum wage per hour for the part time employees and the full time employees will a good salary around 15$ to 45$ an hour.

# VI.   OPERATIONAL PLAN

## LOCATION AND FACILITIES

This business is located in the heart of Mckeesport at 623 Lon Run Rd, McKeesport PA 15132 right across from the Olympia Shopping Center.

## HOURS OF OPERATION

The business will be open approx 16 hours a day and for 365 days of the year excluding any major government / public or religious holidays. The location will open at 10am in the morning and close at 12 am on weekdays and will open at 10am and close at 2 am on weekends.

## SYSTEMS AND CONTROLS

A huge emphasis will be placed on the customer requirement and freshness of our products.  All products will be rotated bi-weekly to ensure that the products are fresh and not expired. Any expired product will be removed from the shelf immediately and returned to the supplier. Grocery and inventory control will be handled by our computer and will be checked daily by management. Security cameras with hard drives will be installed at the store. These cameras will be used to track and monitor employees and customers service as well as theft and employee behavior. The cameras will be connected to the internet through an Ethernet port and will be ready for remote viewing.

## IMPLEMENTATION ACTIVITIES AND MILESTONES

The implementation activities are as follows:

### *March  2014*
- Obtain Liquor License Approval
- American General Closing company working on details for closing.

### *April 2014*

- Get the Clairton Duquesne McKeesport Enterprize Zone Funding approval
- Obtain Primary Banking Commitment letter.
- Start formulating food product list with Sysco Foods
- Start evaluating Alcohol and bar suppliers
- Receive final drawings and contractor bids for restaurant cleaning, repair and remodeling
- Meet with Food and Health departments
- Complete all requirements for Liquor license transfer
- Test Kitchen 1
- Store marketing phase 1
- Finalize restaurant menus
- Program Register systems

*May 2014*
- Complete and exterior remodeling
- Start marketing phase 2
- Grand opening marketing and ceremony
- Open Store.
- 

*June 2014*
- Move prep kitchen from Monroeville and start Prep Operations
- Program Register systems
- Print Final menus
- Start phase 2 marketing
- Friends & Family Sampling and test Kitchen
- 

*July 2014*
- Final Staff meetings to correct / educate any flaws etc
- Open Restaurant

# VII.  INDUSTRIAL ANALYSIS

Although this business is competitive, the lifestyle changes created by modern living continue to fuel its steady growth. More and more people have less time, resources, and need to relax and drink and get food at a quality location with value pricing. Trends are very important and this business is well positioned to provide its customers food, drinks and entertainment at moderate to low prices.

# VIII. MARKETING & PROMOTION

## PRODUCTS AND SERVICES

Winghart's is a full service restaurant, bar, with a lounge at this location. Some of the products and services include:

- Full service restaurant.
- Full fledge bar
- Lounge
- Stage area for bands etc for the later night weekend crowd

## MARKET DEMOGRAPHICS

The customer base will come from four major segments:

- **The Local Population**-The City of McKeesport has a population of approximately 19,000 people, neighboring white oak has 7800 people, neighboring North Huntington has 29,000 people the surrounding region as a whole has a population of over 2 million people. The business is located next to the prime shopping center and mall for the area and also close proximity to residences, hence will have a lot of transient customers.
- **Local Businesses**- The restaurant is located at the heart of McKeesport on major Highway RT 48 , a highly populated road with several businesses in the area.
- **Travelers**-Travelers coming to Pittsburgh area, Monroeville or even Irwin / Greensburgh will have to pass the area and hence may possibly stop by on their way.
- **University Students** – This location is very close to Penn State McKeesport. We will utilize the college students to aid and help with Marketing.

## PROMOTION & MARKETING PLAN

During the renovation and remodeling of the store, local marketing of the store will be executed. Once the store is opened, there will be a grand opening ceremony where a celebrity will be invited to join the community for some free drinks, beverages, and food while they visit Winghart's for the first time. Some of the marketing and promotional execution strategy includes:

- Face to face marketing with a coupon in the card to all the Schools and businesses.
- Specials & Super-Saver coupons for certain items during first 6 weeks. These coupons can be rotated and vary every week.
- Local Newspaper and entertainment magazine adds
- Email newsletter
- Myspace, Facebook & Twitter adds and networking. Coupon maybe a part of add.
- VIP Cards for some customers.
- Schools – Marketing to all nearby Universities
- Food and Drink Specials.
- Partnerships with the community and businesses around the region and happy hours for businesses including:
  - Chamber of Commerce
  - Local Hotels and Motels – meetings with the manager(s) and coupons for their hotel customers.
  - Discount specials for the larger company employees in area,
  - Community events: Involvement and sponsor community events with Food, etc.
  - Discount saver coupons to nearby apartment communities
  - Discount saver coupons and mailers to nearby residential communities
  - Partnerships & coupon promotions to neighboring banks and their employees
- Signage – Bright Neon / LED signage on the store front
- Awning – Bright led striping and LED display to enhance visibility. This is the only bar and restaurant with an awning grandfathered in.
- Stickers / banners – Make small sticker banners that we can have surrounding partner stores or businesses post or stick on their message boards or windows, creating a greater awareness for our store.
- Continuation and improvement of staff training so that they ask right questions to customers to entice more sales.
- Inflatable balloons & other advertising on special weekends / weekdays during the grand opening
- Specials on slow business days

11

# IX.   ANALYSIS OF THE COMPETITION

There is no concept similar to ours in this market. The other restaurant concepts include:

Tillie's Restaurant  McKeesport - Italian 308 36th St

Rodos McKeesport - Greek, Mediterranean 1597 Lincoln Way

Veltre's Pizza & Sandwiches McKeesport - Pizza, Sandwiches/Subs, Salad 2812 State St

China Jade Restaurant McKeesport - Chinese 4313 Walnut St Ste 40

Antojitos Authentic Mexican... McKeesport - Mexican 3001 5th Ave

Minerva Bakery McKeesport - Bakery 927 5th Ave

Woody's Italian Restaurant McKeesport - Italian, Pizza 5300 Walnut St

Fellini's Pizzeria McKeesport - Burgers, Pizza, Sandwiches/Subs 1624 Lincoln Way

Hoot's McKeesport - American 3115 Walnut St

Patti's Pasticceria McKeesport - Bakery, Coffee 1502 Lincoln Way

Jo-Lynn Pizza McKeesport - Pizza 3116 Liberty Way

Boston Waterfront & Lounge McKeesport - American, Seafood, Steakhouse 2422 Saint David Dr

The Original Pizza & Gyro... McKeesport - Pizza, Sandwiches/Subs, Buffet 801 Oneil Blvd

Elbow Room McKeesport - Pizza 201 W 5th Ave

Dot's Family Restaurant McKeesport - Diner 2634 5th Ave

Port Vue Pub McKeesport - American - 305 Laredo St

However, none of these locations will have all the features that we will provide plus none of them will provide customer service that we will.

12

The businesses Competitive Advantages
- o Great food around the clock
- o The only burger bar concept in the area.
- o Great Customer service and experience
- o All our food is made fresh daily
- o A large number of services for customers.
- o VIP Lounge to the regular customers


## COMPETITIVE STRATEGY

There are five major ways that we will create an advantage over our competitors:

- Excellent customer service. More staff will be hired for the peak hours of operation, so that they do not have to wait for more than 2 minutes to be served
- Clean Store
- Product identity, quality, and display.
- High employee motivation and good sales attitude.
- Innovative and aggressive service options. The staff will be trained to smile and greet customers and ask them relevant questions with corresponding body language to entice them to make additional purchases.
- Customer feedback and new product requirements will be documented and brought into the store.
- Very attractive and friendly waiters, bartenders, etc.
- Creative and aggressive marketing and promotions


Once a customer has visited our business and given us a chance to serve them, their experience will be reinforced with friendly, efficient, knowledgeable service.

13

## X.   EQUIPMENT LIST & VALUATION

The property is being sold with all the equipment and furniture inside the store. The list of equipment and furniture included with the purchase are as follows:

The total square footage of the building is 25,000. The building was appraised in past for $450,000 and was listed about a year ago for 275,000$. Currently under contract for Winghart's to purchase for $132,500

In addition, the location is approved a liquor license valued at 50,000$

|   | Item | Value |
|---|------|-------|
|   |      |       |
| 1 | Building (~ 25,000 sqf), valued after remodel | $ 1,000,000 |
| 2 | Allegheny County Liquor License | $ 50,000 |
| 3 | 1st Floor Kitchen Equipment | $ 100,000 |
| 4 | Tables & Chairs | $ 25,000 |
| 5 | 1st Floor Bar | $ 25,000 |
| 6 | 2nd Floor Equipment | $ 50,000 |
| 7 | Goodwill | $ 250,000 |
|   |      |       |
|   |      |       |
|   | **TOTAL** | **$1,500,000** |

## XI.   STARTUP COSTS & FINANCIAL PLAN

**Startup Costs**

|  | COSTS $ |
|---|---|
|  |  |
| Purchase Building | $132,500 |
| Remodeling, Repair, Rehabilitate the existing property and pre kitchen | $ 500,000 |
| Equipment, Furniture & Appliances | $ 100,000 |
| Liquor license and Goodwill | $ 50,000 |
|  |  |
|  |  |
| **TOTAL INVESTMENT** | **$ 782,500** |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

**NOTE**

Currently seeking funding ONLY for purchasing real estate and remodeling / rehab work in the premises. The liquor license is already owned and Wingharts owns all the kitchen and prep equipment in the premises.

**RENTAL INCOME:**

The Winghart's prep kitchen will lease the rear kitchen and storage for $3,000 per month which equals $36,000 per year.

15

BREAK EVEN ANALYSIS

| Break-Even Analysis | |
|---|---|
| WINGHART Burgers | |
| | |
| Total Operating Expenses | $548,640.00 |
| Interest | $51,898.13 |
| G&A | $0.00 |
| | |
| Total Fixed Costs | $600,538.13 |
| | |
| | |
| | |
| | |
| | |
| Annual Break-Even Sales | $642,658.57 |
| | |
| Monthly Break-Even Sales | $53,554.88 |
| | |
| Daily Break-Even Sales | $1,760.71 |
| | |
| | |

Note:  This break-even analysis does not account for the fact that
Operating expenses may also be variable with sales.

16

# APPENDIX 1

## RESUME
## OF

## PRASAD MARGABANDHU

## PRASAD MARUGABANDHU, EIT

### SUMMARY

A goal oriented leader, with a Master's degree from Carnegie Mellon University. Possess strong engineering, product development, business and project management skills and expertise. Have developed and designed engineering systems and engineering software systems. Built teams and managed the product development cycle for engineering software systems. Have been involved in starting and launching concepts from scratch into full fledge products. Have been involved in starting and launching a company from scratch and involved as a technical consultant to a startup company.  Written effective proposals for both private and government projects. Involved in several engineering process optimization projects that resulted in tremendous cost savings. A successful real estate investor. Experience in the convenience store, gas station as well as fast food business. Started and developed very successful Subway restaurants and grocery / convenience stores. Possess strong relationship building skills and a very goal oriented approach to managing people and solving problems. Adjunct Professor at Penn State University.

### TECHNICAL BUSINESS & PROJECT MANAGEMENT QUALIFICATIONS SUMMARY

- Project Management: Includes large and small projects in the areas of engineering, design and software.
- Software & Design Optimization: Developed engineering software and processes to improve efficiency of system process and reduce the overall operation cost.
- Proposal & Bids: Experience in identifying the key value proposition items in engineering projects, concepts and proposals and can translate thoughts and ideas into proposals.
- Product Management: Created several engineering products and engineering software from conceptual stage.  Developed the plan, process flow, built and managed teams and executed within budget.
- Business Development & Sales:  Instrumental in putting together strategic partnerships and deals with net worth of over 5 million dollars.  Closed several large profitable deals and ventures.
- Marketing: Worked hand in hand with the marketing team and assisted in strategizing product releases for targeted markets.
- Curriculum Program Manager: Brought in partners and vendors to support and donate tools and software in goodwill for the program. Secured over 15 million dollars worth of software in goodwill to launch program. Companies included Carnegie Mellon, EDS (UGS), Spatial Analyzer, Microsoft, ABB, MasterCAM.
- Represented companies at several major events and conferences.
- Strong team building and motivating skills. Easy to get a long with and communicate with.

### RETAIL BUSINESS EXPERIENCE

- SUBWAY: Subway Franchisee along with Wife. Attended 2 week long franchise training program. Been through all food and health safety training programs. Currently own and operate 3 Subway stores in Allegheny County and are building two more locations. All stores have managers and assistant mangers and wages in excess of one and a half times

18

minimum wage are paid to managers. Some features of the stores ad operations include: Structured management team, security remote monitoring systems to check on employee behavior, customer service and more, aggressive marketing campaign every 2 to 3 months, business partnerships with local companies, fitness gyms, etc, dedicated team and work friendly atmosphere. The store locations are as follows

- o Subway, Penn Hills – 11667 Penn Hills Dr, Pgh PA 15235
- o Subway Monroeville – 4145 William Penn Hwy, Monroeville PA 15146
- o Subway Dravosburg – 751 Pgh-McKeesport Blvd, Dravosburg PA 15034
- o Subway Glassport – Monongahela Ave (TO BE CONSTUCTED)
- o Subway Dusquesne Village – Homeville Ave (TO BE CONSTUCTED)

- GROCERY / C-STORES / GAS: Bought and sold several convenience stores and gas stations. Currently operate multiple convenience stores with and without gas. Stores all have inventory tracking systems and theft monitoring systems. Managers in stores are paid in excess of one and a half times minimum wage.
- BRANDING: Developed and in the process of implementing proprietary "**THE HOT SPOT**" brand of stores. These stores will include food service consisting of breakfast, lunch and dinner items from Muffins and sandwiches to wraps, mini pizzas and chicken wings and will blend in with and C-store / gas station location.
- Have build stores from scratch and made them very successful by providing great customer service, solid operations and schrewed marketing. Have increase sales over 100% in stores after taking over.
- Well connected in the gas industry

## ENGINEERING / TECHNICAL QUALIFICATIONS SUMMARY

- Co-authored over 11 technical engineering journal papers & have 3 patents filed and several process patents.
- Nine (9) years experience in engineering, engineering design, process optimization and reverse engineering.
- Penn State University, Adjunct Professor: Taught Mechanics of materials and weld distortion mitigation and control to Penn State students.
- Reverse Engineering & Engineering Software Development: Researched industry problem and lead the engineering and development of stand-alone software called MAGRIDE, simplifying the design alignments and geometry. Developed the process, engineering design and equations and the software specification report for writing the software. Managed and worked closely with various teams to implement the tool. Tool allowed one operator to perform a task at fraction of the time that had normally required a team of 5 to 7 operators.
- Technical Liaison: Responsible for developing and handling relationships between all engineering companies and vendors. Been the technical liaison between my company and outside vendors and partners.
- Design & Engineering Design Code Development: Reverse engineered the maglev guideway beam design and put together the design rules and equations governing the design. Validated equations with experimental data. Performed both Finite element analysis and beam theory analysis for beam design. Instrumental in the development of the first US Maglev design code. Suggested several maglev guideway designs with over 20% cost savings in material and fabrication costs, with possible savings of hundreds of millions of dollars for a 50 mile alignment.
- Manufacturing & Fabrication: Analysis and design for fabrication sequence and process for large 200 feet long maglev beams. Optimized the heat input and applied complex non-

19

linear FEA for selection. Experimental validation studies also performed on scaled down structure and results were extrapolated.

- <u>Process Optimization</u>: Created a detailed process flow design for engineering and fabrication process for the high-speed maglev system. Reduced total projected cost and the number of operators required by 30%.
- <u>Technical Program Management</u>: Headed the development of a new associated degree educational training program with Penn State University and the Community College of Allegheny County.
- <u>Surveys & Focus Groups</u>: Conducted industry focus group studies, survey's and meetings showcasing company's product and service offerings to increase customer base and obtain customer feedback to improve and enhance product.
- <u>Mechanical & Structural Design</u>: Experience in designing for static and dynamic loads. Performed Complex finite element analysis including thermal, structural, vibration, welding & heat treatment simulations.

## EDUCATION

**Carnegie Mellon University :** Master of Science in Mechanical Engineering, Aug'98 - Aug'2000.                              G.P.A.: 3.75 / 4.0.

**Tepper School of Business, Carnegie Mellon University:** Attended executive MBA business courses.

**University of Madras (India):** Bachelors Degree in Mechanical Engineering (Honors), May '98.                    Percentage: 71% (Equivalent to GPA of 3.74 / 4.0).

## WORK EXPERIENCE

*Maglev Inc., McKeesport PA (2001 to 2006):*

- Program Manager, Maglev Precision Manufacturing / Engineering Technology (PMT) Degree Program,
- Project Lead, Maglev Model Beam Program (Validation of Experimental results with Analytical Data):
- Project Manager & Design Engr. –Engineering Development from Concept to fully developed Product
- Project Manager: Process Optimization & Product Development:
- Project Lead & Design Engineer: Maglev Guideway Design & Engineering

*Founder, President & CEO, JIYA Corporation. (2003-2005)*

Founded an internet startup company in 2004. Took the concept to product and brought several customers to use the system. Located and built a core team consisting of top people from industry (existing VPs, Directors, project managers and university professors). Took the company to beta launch from scratch. Developed business plan, segmented market and identified first customers, negotiated very challenging deals, while keeping the cost low. Lead the business development and marketing efforts for the company. Developed numerous relationships and partnerships with businesses. Created various affiliate programs to drive customers through our site. Executed the project launch with a shoestring

budget. Currently the venture is reviewing investment options. Some accomplishments include:

- Analyzed, negotiated, and developed many significant strategic online & offline partnerships for a effective launch within a shoestring budget. Partnership companies include Prithvi Solutions, Inc., a leading international software development firm, NARI (national association for home remodeling), NAHB (National Home Builders Association), Pepper Law (Law firm), Realtors Association & more.
- Successful in negotiating several agreements including legal, intellectual property, software development, consulting services, vendor partnerships and more
- Determined value added tools and features that needed to be included in first release of the product from customer focus group studies and competitor analysis.
- Conducted Business and Consumer focus group studies to obtain valuable feedback.
- Obtained sweat equity funding from Carnegie Mellon MISM department. Convinced the department and students to use working for our company as a Master's level thesis project. Succeeded and obtained 5 graduate students on board full time for a semester. Met with graduate students weekly and bi-weekly to evaluate progress and ensure goals were being met on schedule.
- Developed marketing strategies and material, based on target audience.
- Built the advisory board that consisted of leading industry professionals, successful presidents and CEOs, venture capital partners and senior level management executives.
- Brought in first customers and business transactions.
- Created a unique brand with excellent customer service for our customers.
- Challenge was to launch product with a shoestring budget. Successfully accomplished the task.

## PUBLICATIONS & PATENTS

Co-authored over 11 technical journal papers and presented at various leading industry conferences. 3 patents filed including: MAGRIDE software patent, Nodal Solutions Translator patent, service reverse auction patent, service forward auction patent. Some of the journal publications include:

- Prediction of Welding Distortion in the Maglev Beam Using Finite Element Analysis (Feb 2002)
- Large Scale Computing in Welding Application: Modeling distortion of the Maglev Beam - (Jan 2005)
- Evaluation of a Decoupled Plastic Method for Welding Distortion Prediction. Part II: (Feb 2005)
- Evaluation of a Decoupled Plastic Method for Welding Distortion Prediction. Part I: (March 2005)
- A Reduced Order Model for Evaluating the Effect of Rotational Speed on the Natural Frequencies and Mode Shapes of Blades - ASME Journal (Jan 2000)
- System identification in Turbine Blisks – (October 2000)

# WINGHARTS

## FINANCING ASSUMPTIONS

| | | Amount | Interest rate plus service fee | # of years | Monthly D/S | Annual |
|---|---|---|---|---|---|---|
| Bank Loan | Loan 1 | $200,000 | 10.00% | 7.0 | $3,320.24 | $39,843 |
| | | | | | | $0 |
| Enterprise Zone Funding | Loan 2 | $200,000 | 3.00% | 7.0 | $2,642.66 | $31,712 |
| Total | | $400,000 | | | Implicit interest rate | 9.96% |
| | | Initial Draw | | | | |
| | Line of Credit | $0 | 10.50% | 1.0 | | |
| | | (See Cash Flow Statements for additional draws) | | | | |

| | |
|---|---|
| Interest paid | $24,708 |
| Debt redn | $46,846 |
| Total | $71,555 |
| Total shown on docs | |

## ANNUAL SALES ASSUMPTIONS

| | Year one | Year two | Year three |
|---|---|---|---|
| Growth of Product 1 | | 6.00% | 6.00% |
| Growth of Product 2 | | 8.00% | 10.00% |
| Growth of Product 3 | | 8.00% | 10.00% |
| Growth of Product 4 | | 0.00% | 0.50% |
| Growth of Product 5 | | 5.00% | 5.00% |
| Growth - Total Sales | | 6.99% | 8.10% |
| **Bar Sales** | $1,200,000 | $1,272,000 | $1,348,320 |
| **Food Sales** | $1,400,000 | $1,512,000 | $1,663,200 |
| **Events& Other Sales** | $50,000 | $54,000 | $59,400 |
| **Wingharts Prep Rent** | $36,000 | $36,000 | $36,180 |
| **Misc** | $10,000 | $10,500 | $11,025 |
| **TOTAL SALES** | $2,696,000 | $2,884,500 | $3,118,125 |
| COGS - Bar Sales | 22.00% | 10.50% | 11.00% |
| COGS - Food Sales | 36.00% | 36.00% | 36.00% |
| COGS - Events & other | 5.00% | 5.00% | 5.00% |
| COGS - Prep Rent | 0.00% | 0.00% | 0.00% |
| COGS - Misc | 20.00% | 20.00% | 20.00% |

*Note: Indicate whether sales are on cash basis or credit*

| | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|
| Seasonal Sales Schedule | 8.00% | 8.00% | 9.00% | 10.00% | 7.00% | 7.00% |
| | Jan | Feb | Mar | Apr | May | Jun |
| | 8.00% | 9.00% | 10.00% | 10.00% | 7.00% | 7.00% |
| | | | | | Sum = | 100.00% |

## EXPENSE ASSUMPTIONS

| | Year 1 Year one | Year 2 Year two | Year 3 Year three | | | |
|---|---|---|---|---|---|---|
| Growth of Operating Expenses | | 5.00% | 5.00% | | | |
| Wages | $85,000 | $89,250 | $93,713 | per month | | |
| Payroll Taxes | 12.00% | 12.00% | 12.00% | | | |
| Rent + NNN | $0 | $0 | $0 | per month | | |
| Credit Card Charges | $5,000 | $5,250 | $5,513 | per month | | |
| Cable & Internet | $300 | $315 | $331 | per month | | |
| Garbage/Dumpster | $200 | $210 | $221 | per month | | |
| Insurance | $1,000 | $1,050 | $1,103 | per month | | |
| Misc. + Advertising | $1,000 | $1,050 | $1,103 | per month | Payroll Taxes | 122,400.00 |
| Repairs/Maintenance | $1,500 | $1,575 | $1,654 | per month | | |
| Security | $1,600 | $1,680 | $1,764 | per month | | |
| Supplies(off. and operation) | $100 | $105 | $110 | per month | | |
| Taxes( real estate etc.) | $1,100 | $1,155 | $1,213 | per month | | |
| Telephone | $250 | $263 | $276 | per month | | |
| Utilities | $5,000 | $5,250 | $5,513 | per month | | |
| MISC & Other Expenses | $2,000 | $2,100 | $2,205 | per month | | |
| Tax Expense | 0.00% | 0.00% | 0.00% | | | |

| **Capital Expenditures** | Year one | Year two | Year three |
|---|---|---|---|
| Furniture, Fixtures & Equipment | | 0 | |
| Property, Plant & Equipment/Leaseholds | 200,000 | 0 | 0 |
| Goodwill | 0 | 0 | 0 |

Furniture, Fixtures & Equipment depreciate straight line over 10 years.
Property, Plant & Equipment/Leaseholds depreciate to zero at straight line over 39 years.
Goodwill depreciates to zero at straight line over 15 years.

# WINGHARTS
## Pro Forma Balance Sheet

| | 1-Jul-14 | 2-Jul-15 | 1-Jul-16 | 1-Jul-17 |
|---|---|---|---|---|
| **Assets** | | | | |
| Cash | $25,000 | $432,369 | $1,123,084 | $1,905,885 |
| Accounts Receivable | $0 | $0 | $0 | $0 |
| Inventory | $50,000 | $50,000 | $50,000 | $50,000 |
| Prepaid Expenses | $0 | $0 | $0 | $0 |
| Other Current Assets | $0 | $0 | $0 | $0 |
| Total Current Assets | $75,000 | $482,369 | $1,173,084 | $1,955,885 |
| | | | | |
| Property, Plant & Equipment | $700,000 | $700,000 | $700,000 | $700,000 |
| Leasehold Improvements | $0 | $0 | $0 | $0 |
| Furniture, Fixtures & Equipment | $60,000 | $60,000 | $60,000 | $60,000 |
| Goodwill | $0 | $0 | $0 | $0 |
| Other Fixed Assets (Liquor License) | $40,000 | $40,000 | $40,000 | $40,000 |
| Less: Accum.Depr. & Amortz. | $0 | $3,000 | $6,150 | $9,458 |
| Total Fixed Assets | $800,000 | $797,000 | $793,850 | $790,543 |
| | | | | |
| Other Assets  1 | $0 | $0 | $0 | $0 |
| Other Assets  2 | $0 | $0 | $0 | $0 |
| Other Assets 3 | $0 | $0 | $0 | $0 |
| Total Assets | $875,000 | $1,279,369 | $1,966,934 | $2,746,428 |
| | | | | |
| **Liabilities** | | | | |
| Accounts Payable | $0 | $0 | $0 | $0 |
| Notes Payable - Bank Line of Credit | $0 | $0 | $0 | $0 |
| Loans Payable (Current) | $20,778 | $49,815 | $53,036 | $56,533 |
| Shareholder Notes | $0 | $0 | $0 | $0 |
| Accrued Expenses | $0 | $0 | $0 | $0 |
| Other Current Liabilities | $0 | $0 | $0 | $0 |
| Total Current Liabilities | $20,778 | $49,815 | $53,036 | $56,533 |
| | | | | |
| Loans Payable (Non-Current) | $353,154 | $303,338 | $250,303 | $193,770 |
| Shareholder Notes | $0 | $0 | $0 | $0 |
| Other non current liabilities | $0 | $0 | $0 | $0 |
| Total Non Current Liabilites | $353,154 | $303,338 | $250,303 | $193,770 |
| | | | | |
| Total Liabilities | $373,932 | $353,154 | $303,338 | $250,303 |
| | | | | |
| **Equity** | | | | |
| Owner's Equity | $501,068 | $926,216 | $1,663,596 | $2,496,125 |
| | | | | |
| Total Liabilities and Equity | $875,000 | $1,279,369 | $1,966,934 | $2,746,428 |

Financials_- Wingharts 6.xls  3/31/2014

## WINGHARTS
### Projected Income Statement Year 1
Jul-14 - Jun-15

| | Jul-14 | Aug-14 | Sep-14 | Oct-14 | Nov-14 | Dec-14 | Jan-15 | Feb-15 | Mar-15 | Apr-15 | May-15 | Jun-15 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Bar Sales | $96,000 | $96,000 | $108,000 | $120,000 | $84,000 | $84,000 | $96,000 | $108,000 | $120,000 | $120,000 | $84,000 | $84,000 | $1,200,000 |
| Food Sales | $112,000 | $112,000 | $126,000 | $140,000 | $98,000 | $98,000 | $112,000 | $126,000 | $140,000 | $140,000 | $98,000 | $98,000 | $1,400,000 |
| Events& Other Sales | $4,000 | $4,000 | $4,500 | $5,000 | $3,500 | $3,500 | $4,000 | $4,500 | $5,000 | $5,000 | $3,500 | $3,500 | $50,000 |
| Winghartts Prep Rent | $2,880 | $2,880 | $3,240 | $3,600 | $2,520 | $2,520 | $2,880 | $3,240 | $3,600 | $3,600 | $2,520 | $2,520 | $36,000 |
| Misc | $800 | $800 | $900 | $1,000 | $700 | $700 | $800 | $900 | $1,000 | $1,000 | $700 | $700 | $10,000 |
| **Total Sales** | $215,680 | $215,680 | $242,640 | $269,600 | $188,720 | $188,720 | $215,680 | $242,640 | $269,600 | $269,600 | $188,720 | $188,720 | $2,696,000 |
| COGS - Bar Sales | $21,120 | $21,120 | $23,760 | $26,400 | $18,480 | $18,480 | $21,120 | $23,760 | $26,400 | $26,400 | $18,480 | $18,480 | $264,000 |
| COGS - Food Sales | $40,320 | $40,320 | $45,360 | $50,400 | $35,280 | $35,280 | $40,320 | $45,360 | $50,400 | $50,400 | $35,280 | $35,280 | $504,000 |
| COGS - Events & other | $200 | $200 | $225 | $250 | $175 | $175 | $200 | $225 | $250 | $250 | $175 | $175 | $2,500 |
| COGS - Prep Rent | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| COGS - Misc | $576 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $576 |
| **Total COGS** | $62,216 | $61,640 | $69,345 | $77,050 | $53,935 | $53,935 | $61,640 | $69,345 | $77,050 | $77,050 | $53,935 | $53,935 | $771,076 |
| **Gross Profit** | $153,464 | $154,040 | $173,295 | $192,550 | $134,785 | $134,785 | $154,040 | $173,295 | $192,550 | $192,550 | $134,785 | $134,785 | $1,924,924 |
| **Less: Operating Expenses** | | | | | | | | | | | | | |
| Wages | $85,000 | $85,000 | $85,000 | $85,000 | $85,000 | $85,000 | $85,000 | $85,000 | $85,000 | $85,000 | $85,000 | $85,000 | $1,020,000 |
| Payroll Taxes | $10,200 | $10,200 | $10,200 | $10,200 | $10,200 | $10,200 | $10,200 | $10,200 | $10,200 | $10,200 | $10,200 | $10,200 | $122,400 |
| Rent + NNN | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Credit Card Charges | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $60,000 |
| Cable & Internet | $300 | $300 | $300 | $300 | $300 | $300 | $300 | $300 | $300 | $300 | $300 | $300 | $3,600 |
| Garbage/Dumpster | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $2,400 |
| Insurance | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $12,000 |
| Misc. + Advertising | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $12,000 |
| Repairs/Maintenance | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $18,000 |
| Security | $1,600 | $1,600 | $1,600 | $1,600 | $1,600 | $1,600 | $1,600 | $1,600 | $1,600 | $1,600 | $1,600 | $1,600 | $19,200 |
| Supplies(off. and operation) | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $1,200 |
| Taxes (real estate etc.) | $1,100 | $1,100 | $1,100 | $1,100 | $1,100 | $1,100 | $1,100 | $1,100 | $1,100 | $1,100 | $1,100 | $1,100 | $13,200 |
| Telephone | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $3,000 |
| Utilities | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $60,000 |
| MISC & Other Expenses | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $24,000 |
| **Total Operating Expenses** | $114,250 | $114,250 | $114,250 | $114,250 | $114,250 | $114,250 | $114,250 | $114,250 | $114,250 | $114,250 | $114,250 | $114,250 | $1,371,000 |
| **Operating Profit (Loss)** | $39,214 | $39,790 | $59,045 | $78,300 | $20,535 | $20,535 | $39,790 | $59,045 | $78,300 | $78,300 | $20,535 | $20,535 | $553,924 |
| **EBIT** | $39,214 | $39,790 | $59,045 | $78,300 | $20,535 | $20,535 | $39,790 | $59,045 | $78,300 | $78,300 | $20,535 | $20,535 | $553,924 |
| **Other Income (Expenses)** | | | | | | | | | | | | | |
| Interest | ($2,167) | ($2,148) | ($2,128) | ($2,109) | ($2,089) | ($2,070) | ($2,050) | ($2,030) | ($2,010) | ($1,990) | ($1,969) | ($1,949) | ($24,708) |
| Pre Tax Profit | $37,047 | $37,642 | $56,917 | $76,191 | $18,446 | $18,465 | $37,740 | $57,015 | $76,290 | $76,310 | $18,566 | $18,586 | $529,216 |
| Tax Expense | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| **Net Profit** | $37,047 | $37,642 | $56,917 | $76,191 | $18,446 | $18,465 | $37,740 | $57,015 | $76,290 | $76,310 | $18,566 | $18,586 | $529,216 |

# WINGHARTS
## Projected Income Statement Year 2
### Jul-15  -  Jun-16

| | Jul-15 | Aug-15 | Sep-15 | Oct-15 | Nov-15 | Dec-15 | Jan-16 | Feb-16 | Mar-16 | Apr-16 | May-16 | Jun-16 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Bar Sales | $101,760 | $101,760 | $114,480 | $127,200 | $89,040 | $89,040 | $101,760 | $114,480 | $127,200 | $127,200 | $89,040 | $89,040 | $1,272,000 |
| Food Sales | $120,960 | $120,960 | $136,080 | $151,200 | $105,840 | $105,840 | $120,960 | $136,080 | $151,200 | $151,200 | $105,840 | $105,840 | $1,512,000 |
| Events& Other Sales | $4,320 | $4,320 | $4,860 | $5,400 | $3,780 | $3,780 | $4,320 | $4,860 | $5,400 | $5,400 | $3,780 | $3,780 | $54,000 |
| Wingharts Prep Rent | $2,880 | $2,880 | $3,240 | $3,600 | $2,520 | $2,520 | $2,880 | $3,240 | $3,600 | $3,600 | $2,520 | $2,520 | $36,000 |
| Misc. | $840 | $840 | $945 | $1,050 | $735 | $735 | $840 | $945 | $1,050 | $1,050 | $735 | $735 | $10,500 |
| **Total Sales** | $230,760 | $230,760 | $259,605 | $288,450 | $201,915 | $201,915 | $230,760 | $259,605 | $288,450 | $288,450 | $201,915 | $201,915 | $2,884,500 |
| COGS - Bar Sales | $10,685 | $10,685 | $12,020 | $13,356 | $9,349 | $9,349 | $10,685 | $12,020 | $13,356 | $13,356 | $9,349 | $9,349 | $133,560 |
| COGS - Food Sales | $43,546 | $43,546 | $48,989 | $54,432 | $38,102 | $38,102 | $43,546 | $48,989 | $54,432 | $54,432 | $38,102 | $38,102 | $544,320 |
| COGS - Events & other | $216 | $216 | $243 | $270 | $189 | $189 | $216 | $243 | $270 | $270 | $189 | $189 | $2,700 |
| COGS - Prep Rent | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| COGS - Misc | $168 | $168 | $189 | $210 | $147 | $147 | $168 | $189 | $210 | $210 | $147 | $147 | $2,100 |
| **Total COGS** | $54,614 | $54,614 | $61,441 | $68,268 | $47,788 | $47,788 | $54,614 | $61,441 | $68,268 | $68,268 | $47,788 | $47,788 | $682,680 |
| **Gross Profit** | $176,146 | $176,146 | $198,164 | $220,182 | $154,127 | $154,127 | $176,146 | $198,164 | $220,182 | $220,182 | $154,127 | $154,127 | $2,201,820 |
| **Less: Operating Expenses** | | | | | | | | | | | | | |
| Wages | $89,250 | $89,250 | $89,250 | $89,250 | $89,250 | $89,250 | $89,250 | $89,250 | $89,250 | $89,250 | $89,250 | $89,250 | $1,071,000 |
| Payroll Taxes | $10,710 | $10,710 | $10,710 | $10,710 | $10,710 | $10,710 | $10,710 | $10,710 | $10,710 | $10,710 | $10,710 | $10,710 | $128,520 |
| Rent + NNN | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Credit Card Charges | $5,250 | $5,250 | $5,250 | $5,250 | $5,250 | $5,250 | $5,250 | $5,250 | $5,250 | $5,250 | $5,250 | $5,250 | $63,000 |
| Cable & Internet | $315 | $315 | $315 | $315 | $315 | $315 | $315 | $315 | $315 | $315 | $315 | $315 | $3,780 |
| Garbage/Dumpster | $210 | $210 | $210 | $210 | $210 | $210 | $210 | $210 | $210 | $210 | $210 | $210 | $2,520 |
| Insurance | $1,050 | $1,050 | $1,050 | $1,050 | $1,050 | $1,050 | $1,050 | $1,050 | $1,050 | $1,050 | $1,050 | $1,050 | $12,600 |
| Misc. + Advertising | $1,050 | $1,050 | $1,050 | $1,050 | $1,050 | $1,050 | $1,050 | $1,050 | $1,050 | $1,050 | $1,050 | $1,050 | $12,600 |
| Repairs/Maintenance | $1,575 | $1,575 | $1,575 | $1,575 | $1,575 | $1,575 | $1,575 | $1,575 | $1,575 | $1,575 | $1,575 | $1,575 | $18,900 |
| Security | $1,680 | $1,680 | $1,680 | $1,680 | $1,680 | $1,680 | $1,680 | $1,680 | $1,680 | $1,680 | $1,680 | $1,680 | $20,160 |
| Supplies(off. and operation) | $105 | $105 | $105 | $105 | $105 | $105 | $105 | $105 | $105 | $105 | $105 | $105 | $1,260 |
| Taxes( real estate etc,) | $1,155 | $1,155 | $1,155 | $1,155 | $1,155 | $1,155 | $1,155 | $1,155 | $1,155 | $1,155 | $1,155 | $1,155 | $13,860 |
| Telephone | $263 | $263 | $263 | $263 | $263 | $263 | $263 | $263 | $263 | $263 | $263 | $263 | $3,150 |
| Utilities | $5,250 | $5,250 | $5,250 | $5,250 | $5,250 | $5,250 | $5,250 | $5,250 | $5,250 | $5,250 | $5,250 | $5,250 | $63,000 |
| MISC & Other Expenses | $2,100 | $2,100 | $2,100 | $2,100 | $2,100 | $2,100 | $2,100 | $2,100 | $2,100 | $2,100 | $2,100 | $2,100 | $25,200 |
| **Total Operating Expenses** | $119,963 | $119,963 | $119,963 | $119,963 | $119,963 | $119,963 | $119,963 | $119,963 | $119,963 | $119,963 | $119,963 | $119,963 | $1,439,550 |
| **Operating Profit (Loss)** | $56,183 | $56,183 | $78,201 | $100,220 | $34,165 | $34,165 | $56,183 | $78,201 | $100,220 | $100,220 | $34,165 | $34,165 | $762,270 |
| **EBIT** | $56,183 | $56,183 | $78,201 | $100,220 | $34,165 | $34,165 | $56,183 | $78,201 | $100,220 | $100,220 | $34,165 | $34,165 | $762,270 |
| Other Income (Expenses) | | | | | | | | | | | | | |
| Interest | ($1,928) | ($1,908) | ($1,887) | ($1,866) | ($1,845) | ($1,823) | ($1,802) | ($1,780) | ($1,758) | ($1,737) | ($1,714) | ($1,692) | ($21,740) |
| **Pre Tax Profit** | $54,255 | $54,275 | $76,315 | $98,354 | $32,320 | $32,342 | $54,381 | $76,421 | $98,461 | $98,483 | $32,450 | $32,473 | $740,530 |
| Tax Expense | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| **Net Profit** | $54,255 | $54,275 | $76,315 | $98,354 | $32,320 | $32,342 | $54,381 | $76,421 | $98,461 | $98,483 | $32,450 | $32,473 | $740,530 |

## WINGHARTS
### Projected Income Statement Year 3
Jul-16 - Jun-17

| | Jul-16 | Aug-16 | Sep-16 | Oct-16 | Nov-16 | Dec-16 | Jan-17 | Feb-17 | Mar-17 | Apr-17 | May-17 | Jun-17 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Bar Sales | $107,866 | $107,866 | $121,349 | $134,832 | $94,382 | $94,382 | $107,866 | $121,349 | $134,832 | $134,832 | $94,382 | $94,382 | $1,348,320 |
| Food Sales | $133,056 | $133,056 | $149,688 | $166,320 | $116,424 | $116,424 | $133,056 | $149,688 | $166,320 | $166,320 | $116,424 | $116,424 | $1,663,200 |
| Events& Other Sales | $4,752 | $4,752 | $5,346 | $5,940 | $4,158 | $4,158 | $4,752 | $5,346 | $5,940 | $5,940 | $4,158 | $4,158 | $59,400 |
| Winghars Prep Rent | $2,894 | $2,894 | $3,256 | $3,618 | $2,533 | $2,533 | $2,894 | $3,256 | $3,618 | $3,618 | $2,533 | $2,533 | $36,180 |
| Misc | $882 | $882 | $992 | $1,103 | $772 | $772 | $882 | $992 | $1,103 | $1,103 | $772 | $772 | $11,025 |
| **Total Sales** | $249,450 | $249,450 | $280,631 | $311,813 | $218,269 | $218,269 | $249,450 | $280,631 | $311,813 | $311,813 | $218,269 | $218,269 | $3,118,125 |
| COGS - Bar Sales | $11,865 | $11,865 | $13,348 | $14,832 | $10,382 | $10,382 | $11,865 | $13,348 | $14,832 | $14,832 | $10,382 | $10,382 | $148,315 |
| COGS - Food Sales | $47,900 | $47,900 | $53,888 | $59,875 | $41,913 | $41,913 | $47,900 | $53,888 | $59,875 | $59,875 | $41,913 | $41,913 | $598,752 |
| COGS - Events & other | $238 | $238 | $267 | $297 | $208 | $208 | $238 | $267 | $297 | $297 | $208 | $208 | $2,970 |
| COGS - Prep Rent | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| COGS - Misc | $176 | $176 | $198 | $221 | $154 | $154 | $176 | $198 | $221 | $221 | $154 | $154 | $2,205 |
| **Total COGS** | $60,179 | $60,179 | $67,702 | $75,224 | $52,657 | $52,657 | $60,179 | $67,702 | $75,224 | $75,224 | $52,657 | $52,657 | $752,242 |
| **Gross Profit** | $189,271 | $189,271 | $212,929 | $236,588 | $165,612 | $165,612 | $189,271 | $212,929 | $236,588 | $236,588 | $165,612 | $165,612 | $2,365,883 |
| **Less: Operating Expenses** | | | | | | | | | | | | | |
| Wages | $93,713 | $93,713 | $93,713 | $93,713 | $93,713 | $93,713 | $93,713 | $93,713 | $93,713 | $93,713 | $93,713 | $93,713 | $1,124,550 |
| Payroll Taxes | $11,246 | $11,246 | $11,246 | $11,246 | $11,246 | $11,246 | $11,246 | $11,246 | $11,246 | $11,246 | $11,246 | $11,246 | $134,946 |
| Rent + NNN | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Credit Card Charges | $5,513 | $5,513 | $5,513 | $5,513 | $5,513 | $5,513 | $5,513 | $5,513 | $5,513 | $5,513 | $5,513 | $5,513 | $66,150 |
| Cable & Internet | $331 | $331 | $331 | $331 | $331 | $331 | $331 | $331 | $331 | $331 | $331 | $331 | $3,969 |
| Garbage/Dumpster | $221 | $221 | $221 | $221 | $221 | $221 | $221 | $221 | $221 | $221 | $221 | $221 | $2,646 |
| Insurance | $1,103 | $1,103 | $1,103 | $1,103 | $1,103 | $1,103 | $1,103 | $1,103 | $1,103 | $1,103 | $1,103 | $1,103 | $13,230 |
| Misc. + Advertising | $1,103 | $1,103 | $1,103 | $1,103 | $1,103 | $1,103 | $1,103 | $1,103 | $1,103 | $1,103 | $1,103 | $1,103 | $13,230 |
| Repairs/Maintenance | $1,654 | $1,654 | $1,654 | $1,654 | $1,654 | $1,654 | $1,654 | $1,654 | $1,654 | $1,654 | $1,654 | $1,654 | $19,845 |
| Security | $1,764 | $1,764 | $1,764 | $1,764 | $1,764 | $1,764 | $1,764 | $1,764 | $1,764 | $1,764 | $1,764 | $1,764 | $21,167 |
| Supplies(off. and operation) | $110 | $110 | $110 | $110 | $110 | $110 | $110 | $110 | $110 | $110 | $110 | $110 | $1,323 |
| Taxes(real estate etc.) | $1,213 | $1,213 | $1,213 | $1,213 | $1,213 | $1,213 | $1,213 | $1,213 | $1,213 | $1,213 | $1,213 | $1,213 | $14,553 |
| Telephone | $276 | $276 | $276 | $276 | $276 | $276 | $276 | $276 | $276 | $276 | $276 | $276 | $3,308 |
| Utilities | $5,513 | $5,513 | $5,513 | $5,513 | $5,513 | $5,513 | $5,513 | $5,513 | $5,513 | $5,513 | $5,513 | $5,513 | $66,150 |
| MISC & Other Expenses | $2,205 | $2,205 | $2,205 | $2,205 | $2,205 | $2,205 | $2,205 | $2,205 | $2,205 | $2,205 | $2,205 | $2,205 | $26,460 |
| **Total Operating Expenses** | $125,961 | $125,961 | $125,961 | $125,961 | $125,961 | $125,961 | $125,961 | $125,961 | $125,961 | $125,961 | $125,961 | $125,961 | $1,511,528 |
| Operating Profit (Loss) | $63,310 | $63,310 | $86,969 | $110,628 | $39,651 | $39,651 | $63,310 | $86,969 | $110,628 | $110,628 | $39,651 | $39,651 | $854,355 |
| EBIT | $63,310 | $63,310 | $86,969 | $110,628 | $39,651 | $39,651 | $63,310 | $86,969 | $110,628 | $110,628 | $39,651 | $39,651 | $854,355 |
| **Other Income (Expenses)** | | | | | | | | | | | | | |
| Interest | ($1,670) | ($1,647) | ($1,625) | ($1,602) | ($1,579) | ($1,556) | ($1,533) | ($1,509) | ($1,485) | ($1,462) | ($1,438) | ($1,414) | ($18,519) |
| Pre Tax Profit | $61,640 | $61,663 | $85,344 | $109,026 | $38,072 | $38,095 | $61,777 | $85,460 | $109,142 | $109,166 | $38,213 | $38,237 | $835,836 |
| Tax Expense | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| **Net Profit** | $61,640 | $61,663 | $85,344 | $109,026 | $38,072 | $38,095 | $61,777 | $85,460 | $109,142 | $109,166 | $38,213 | $38,237 | $835,836 |

## WINGHARTS
## CASH FLOW PROJECTION - YEAR 1
Jul-14 - Jun-15

| | Pre-Start-up Position | Jul-14 | Aug-14 | Sep-14 | Oct-14 | Nov-14 | Dec-14 | Jan-15 | Feb-15 | Mar-15 | Apr-15 | May-15 | Jun-15 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **CASH ON HAND** (Beginning of Month) 1 | $200,000 | ($550,000) | ($16,749) | $17,078 | $70,160 | $142,497 | $157,070 | $171,642 | $205,469 | $258,551 | $330,888 | $403,225 | $417,797 | $2,307,628 |
| **CASH RECEIPTS** | | 0 | | | | | | 0 | | | | | | |
| Bar Sales | | $96,000 | $108,000 | $108,000 | $120,000 | $84,000 | $84,000 | $96,000 | $108,000 | $120,000 | $120,000 | $84,000 | $84,000 | $1,200,000 |
| Food Sales | | $112,000 | $126,000 | $126,000 | $140,000 | $98,000 | $98,000 | $112,000 | $126,000 | $140,000 | $140,000 | $98,000 | $98,000 | $1,400,000 |
| Events& Other Sales | | $4,000 | $4,000 | $4,500 | $5,000 | $3,500 | $3,500 | $4,000 | $4,500 | $5,000 | $5,000 | $3,500 | $3,500 | $50,000 |
| Winghartz Prep Rent | | $2,880 | $2,880 | $3,240 | $3,600 | $2,520 | $2,520 | $2,880 | $3,240 | $3,600 | $3,600 | $2,520 | $2,520 | $36,000 |
| Misc | | $800 | $800 | $900 | $1,000 | $700 | $700 | $800 | $900 | $1,000 | $1,000 | $700 | $700 | $10,000 |
| Line of Credit Draws | | | | | | | | | | | | | | $0 |
| Vendor Credit | | | | | | | | | | | | | | $0 |
| Loan &/or other Cash Injection | $200,000 | | | | | | | | | | | | | $200,000 |
| **TOTAL CASH RECEIPTS** | $200,000 | $215,680 | $215,680 | $242,640 | $269,600 | $188,720 | $188,720 | $215,680 | $242,640 | $269,600 | $269,600 | $188,720 | $188,720 | $2,896,000 |
| **TOTAL CASH AVAILABLE** | $400,000 | $165,680 | $198,931 | $259,718 | $339,760 | $331,217 | $345,790 | $387,322 | $448,109 | $528,151 | $600,488 | $591,945 | $606,517 | $5,203,628 |
| **CASH PAID OUT** | | 0 | | | | | | 0 | | | | | | |
| Cost of Goods Sold | | $62,216 | $61,640 | $69,345 | $77,050 | $53,935 | $53,935 | $61,640 | $69,345 | $77,050 | $77,050 | $53,935 | $53,935 | $771,076 |
| Less: Operating Expenses | | | | | | | | | | | | | | |
| Wages | | $85,000 | $85,000 | $85,000 | $85,000 | $85,000 | $85,000 | $85,000 | $85,000 | $85,000 | $85,000 | $85,000 | $85,000 | $1,020,000 |
| Payroll Taxes | | $10,200 | $10,200 | $10,200 | $10,200 | $10,200 | $10,200 | $10,200 | $10,200 | $10,200 | $10,200 | $10,200 | $10,200 | $122,400 |
| Rent + NNN | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Credit Card Charges | | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $60,000 |
| Cable & Internet | | $300 | $300 | $300 | $300 | $300 | $300 | $300 | $300 | $300 | $300 | $300 | $300 | $3,600 |
| Garbage/Dumpster | | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $2,400 |
| Insurance | | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $12,000 |
| Misc. + Advertising | | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $12,000 |
| Repairs/Maintenance | | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $18,000 |
| Security | | $1,600 | $1,600 | $1,600 | $1,600 | $1,600 | $1,600 | $1,600 | $1,600 | $1,600 | $1,600 | $1,600 | $1,600 | $19,200 |
| Supplies(off. and operation) | | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $1,200 |
| Taxes( real estate etc.) | | $1,100 | $1,100 | $1,100 | $1,100 | $1,100 | $1,100 | $1,100 | $1,100 | $1,100 | $1,100 | $1,100 | $1,100 | $13,200 |
| Telephone | | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $3,000 |
| Utilities | | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $60,000 |
| MISC & Other Expenses | | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $24,000 |
| Tax Expense | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Interest | | $2,167 | $2,148 | $2,128 | $2,109 | $2,089 | $2,070 | $2,050 | $2,030 | $2,010 | $1,990 | $1,969 | $1,949 | $24,708 |
| **Subtotal** | $0 | $178,633 | $178,038 | $185,723 | $193,409 | $170,274 | $170,255 | $177,940 | $185,625 | $193,310 | $193,290 | $170,154 | $170,134 | $2,166,784 |
| Loan Principal Payment | | $3,796 | $3,815 | $3,835 | $3,854 | $3,873 | $3,893 | $3,913 | $3,933 | $3,953 | $3,973 | $3,993 | $4,014 | $46,846 |
| Line of Credit Repayment | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Investors Bank First Mortgage | $200,000 | | | | | | | | | | | | | $0 |
| Enterprize Zone Funding 2nd lien | $200,000 | | | | | | | | | | | | | $0 |
| Winghartz Investment Income | $50,000 | | | | | | | | | | | | | $0 |
| | | | | | | | | | | | | | | $0 |
| | | | | | | | | | | | | | | $0 |
| Shareholder Draws | $0 | | | | | | | | | | | | | $0 |
| Working Capital | $0 | | | | | | | | | | | | | $0 |
| **TOTAL CASH PAID OUT** | $450,000 | $182,429 | $181,853 | $189,558 | $197,263 | $174,148 | $174,148 | $181,853 | $189,558 | $197,263 | $197,263 | $174,148 | $174,148 | $2,663,631 |
| **CASH POSITION** | ($50,000) | ($16,749) | $17,078 | $70,160 | $142,497 | $157,070 | $171,642 | $205,469 | $258,551 | $330,888 | $403,225 | $417,797 | $432,369 | |

**WINGHARTS**
**CASH FLOW PROJECTION - YEAR 2**
Jul-15 - Jun-16

| | Jul-15 | Aug-15 | Sep-15 | Oct-15 | Nov-15 | Dec-15 | Jan-16 | Feb-16 | Mar-16 | Apr-16 | May-16 | Jun-16 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **CASH ON HAND** (Beginning of Month) 1 | $432,369 | $482,589 | $532,810 | $605,048 | $699,305 | $727,507 | $755,709 | $805,929 | $878,167 | $972,424 | $1,066,680 | $1,094,882 | $9,053,419 |
| **CASH RECEIPTS** | | | | | | | | | | | | | |
| Bar Sales | $101,760 | $101,760 | $114,480 | $127,200 | $89,040 | $89,040 | $101,760 | $114,480 | $127,200 | $127,200 | $89,040 | $89,040 | $1,272,000 |
| Food Sales | $120,960 | $120,960 | $136,080 | $151,200 | $105,840 | $105,840 | $120,960 | $136,080 | $151,200 | $151,200 | $105,840 | $105,840 | $1,512,000 |
| Events& Other Sales | $4,320 | $4,320 | $4,860 | $5,400 | $3,780 | $3,780 | $4,320 | $4,860 | $5,400 | $5,400 | $3,780 | $3,780 | $54,000 |
| Winghart Prep Rent | $2,880 | $2,880 | $3,240 | $3,600 | $2,520 | $2,520 | $2,880 | $3,240 | $3,600 | $3,600 | $2,520 | $2,520 | $36,000 |
| Misc | $840 | $840 | $945 | $1,050 | $735 | $735 | $840 | $945 | $1,050 | $1,050 | $735 | $735 | $10,500 |
| Line of Credit | | | | | | | | | | | | | $0 |
| Vendor Credit | | | | | | | | | | | | | $0 |
| Loan &/or other Cash Injection | | | | | | | | | | | | | $0 |
| **TOTAL CASH RECEIPTS** | $230,760 | $230,760 | $259,605 | $288,450 | $201,915 | $201,915 | $230,760 | $259,605 | $288,450 | $288,450 | $201,915 | $201,915 | $2,884,500 |
| **TOTAL CASH AVAILABLE** | $663,129 | $713,349 | $792,415 | $893,498 | $901,220 | $929,422 | $986,469 | $1,065,534 | $1,166,617 | $1,260,874 | $1,268,595 | $1,296,797 | $11,937,918 |
| **CASH PAID OUT** | | | | | | | | | | | | | |
| Cost of Goods Sold | $54,614 | $54,614 | $61,441 | $68,268 | $47,788 | $47,788 | $54,614 | $61,441 | $68,268 | $68,268 | $47,788 | $47,788 | $682,680 |
| Less: Operating Expenses | | | | | | | | | | | | | |
| Wages | $89,250 | $89,250 | $89,250 | $89,250 | $89,250 | $89,250 | $89,250 | $89,250 | $89,250 | $89,250 | $89,250 | $89,250 | $1,071,000 |
| Payroll Taxes | $10,710 | $10,710 | $10,710 | $10,710 | $10,710 | $10,710 | $10,710 | $10,710 | $10,710 | $10,710 | $10,710 | $10,710 | $128,520 |
| Rent + NNN | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Credit Card Charges | $5,250 | $5,250 | $5,250 | $5,250 | $5,250 | $5,250 | $5,250 | $5,250 | $5,250 | $5,250 | $5,250 | $5,250 | $63,000 |
| Cable & Internet | $315 | $315 | $315 | $315 | $315 | $315 | $315 | $315 | $315 | $315 | $315 | $315 | $3,780 |
| Garbage/Dumpster | $210 | $210 | $210 | $210 | $210 | $210 | $210 | $210 | $210 | $210 | $210 | $210 | $2,520 |
| Insurance | $1,050 | $1,050 | $1,050 | $1,050 | $1,050 | $1,050 | $1,050 | $1,050 | $1,050 | $1,050 | $1,050 | $1,050 | $12,600 |
| Misc. + Advertising | $1,050 | $1,050 | $1,050 | $1,050 | $1,050 | $1,050 | $1,050 | $1,050 | $1,050 | $1,050 | $1,050 | $1,050 | $12,600 |
| Repairs/Maintenance | $1,575 | $1,575 | $1,575 | $1,575 | $1,575 | $1,575 | $1,575 | $1,575 | $1,575 | $1,575 | $1,575 | $1,575 | $18,900 |
| Security | $1,680 | $1,680 | $1,680 | $1,680 | $1,680 | $1,680 | $1,680 | $1,680 | $1,680 | $1,680 | $1,680 | $1,680 | $20,160 |
| Supplies(off. and operation) | $105 | $105 | $105 | $105 | $105 | $105 | $105 | $105 | $105 | $105 | $105 | $105 | $1,260 |
| Taxes (real estate etc.) | $1,155 | $1,155 | $1,155 | $1,155 | $1,155 | $1,155 | $1,155 | $1,155 | $1,155 | $1,155 | $1,155 | $1,155 | $13,860 |
| Telephone | $263 | $263 | $263 | $263 | $263 | $263 | $263 | $263 | $263 | $263 | $263 | $263 | $3,150 |
| Utilities | $5,250 | $5,250 | $5,250 | $5,250 | $5,250 | $5,250 | $5,250 | $5,250 | $5,250 | $5,250 | $5,250 | $5,250 | $63,000 |
| MISC & Other Expenses | $2,100 | $2,100 | $2,100 | $2,100 | $2,100 | $2,100 | $2,100 | $2,100 | $2,100 | $2,100 | $2,100 | $2,100 | $25,200 |
| Interest | $1,928 | $1,908 | $1,887 | $1,866 | $1,845 | $1,823 | $1,802 | $1,780 | $1,758 | $1,737 | $1,714 | $1,692 | $21,740 |
| **Subtotal** | $176,505 | $176,485 | $183,290 | $190,096 | $169,595 | $169,573 | $176,379 | $183,184 | $189,989 | $189,967 | $169,465 | $169,442 | $2,143,970 |
| Loan Principal Payment | $4,035 | $4,055 | $4,076 | $4,097 | $4,118 | $4,140 | $4,161 | $4,183 | $4,204 | $4,226 | $4,248 | $4,271 | $49,815 |
| Line of Credit Repayment | | | | | | | | | | | | | $0 |
| Investors Bank First Mortgage | | | | | | | | | | | | | $0 |
| Enterprize Zone Funding 2nd lien | | | | | | | | | | | | | $0 |
| Winghars Investment Income | | | | | | | | | | | | | $0 |
| Shareholder Draws | | | | | | | | | | | | | $0 |
| Working Capital | | | | | | | | | | | | | $0 |
| **TOTAL CASH PAID OUT** | $180,540 | $180,540 | $187,367 | $194,193 | $173,713 | $173,713 | $180,540 | $187,367 | $194,193 | $194,193 | $173,713 | $173,713 | $2,193,785 |
| **CASH POSITION** | $482,589 | $532,810 | $605,048 | $699,305 | $727,507 | $755,709 | $805,929 | $878,167 | $972,424 | $1,066,680 | $1,094,882 | $1,123,084 | |

Financials_ – Winghars 6.xls  3/31/2014

**WINGHARTS**
**CASH FLOW PROJECTION - YEAR 3**
**Jul-16   -   Jun-17**

| | Jul-16 | Aug-16 | Sep-16 | Oct-16 | Nov-16 | Dec-16 | Jan-17 | Feb-17 | Mar-17 | Apr-17 | May-17 | Jun-17 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CASH ON HAND (Beginning of Month) 1 | $1,123,084 | $1,180,432 | $1,237,779 | $1,318,785 | $1,423,449 | $1,457,138 | $1,490,826 | $1,548,173 | $1,629,179 | $1,733,844 | $1,838,508 | $1,872,197 | $17,853,393 |
| **CASH RECEIPTS** | | | | | | | | | | | | | |
| Bar Sales | $107,866 | $107,866 | $121,349 | $134,832 | $94,382 | $94,382 | $107,866 | $121,349 | $134,832 | $134,832 | $94,382 | $94,382 | $1,348,320 |
| Food Sales | $133,056 | $133,056 | $149,688 | $166,320 | $116,424 | $116,424 | $133,056 | $149,688 | $166,320 | $166,320 | $116,424 | $116,424 | $1,663,200 |
| Events & Other Sales | $4,752 | $4,752 | $5,346 | $5,940 | $4,158 | $4,158 | $4,752 | $5,346 | $5,940 | $5,940 | $4,158 | $4,158 | $59,400 |
| Winghards Prep Rent | $2,894 | $2,894 | $3,256 | $3,618 | $2,533 | $2,533 | $2,894 | $3,256 | $3,618 | $3,618 | $2,533 | $2,533 | $36,180 |
| Misc | $882 | $882 | $992 | $1,103 | $772 | $772 | $882 | $992 | $1,103 | $1,103 | $772 | $772 | $11,025 |
| Line of Credit | | | | | | | | | | | | | $0 |
| Vendor Credit | | | | | | | | | | | | | $0 |
| Loan &/or other Cash Injection | | | | | | | | | | | | | |
| TOTAL CASH RECEIPTS | $249,450 | $249,450 | $280,631 | $311,813 | $218,269 | $218,269 | $249,450 | $280,631 | $311,813 | $311,813 | $218,269 | $218,269 | $3,118,128 |
| TOTAL CASH AVAILABLE | $1,372,534 | $1,429,882 | $1,518,410 | $1,630,597 | $1,641,718 | $1,675,406 | $1,740,276 | $1,828,804 | $1,940,991 | $2,045,656 | $2,056,777 | $2,090,465 | $20,971,515 |
| **CASH PAID OUT** | | | | | | | | | | | | | |
| Cost of Goods Sold | $60,179 | $60,179 | $67,702 | $75,224 | $52,657 | $52,657 | $60,179 | $67,702 | $75,224 | $75,224 | $52,657 | $52,657 | $752,242 |
| Less: Operating Expenses | | | | | | | | | | | | | |
| Wages | $93,713 | $93,713 | $93,713 | $93,713 | $93,713 | $93,713 | $93,713 | $93,713 | $93,713 | $93,713 | $93,713 | $93,713 | $1,124,550 |
| Payroll Taxes | $11,246 | $11,246 | $11,246 | $11,246 | $11,246 | $11,246 | $11,246 | $11,246 | $11,246 | $11,246 | $11,246 | $11,246 | $134,948 |
| Rent + NNN | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Credit Card Charges | $5,513 | $5,513 | $5,513 | $5,513 | $5,513 | $5,513 | $5,513 | $5,513 | $5,513 | $5,513 | $5,513 | $5,513 | $66,150 |
| Cable & Internet | $331 | $331 | $331 | $331 | $331 | $331 | $331 | $331 | $331 | $331 | $331 | $331 | $3,969 |
| Garbage/Dumpster | $221 | $221 | $221 | $221 | $221 | $221 | $221 | $221 | $221 | $221 | $221 | $221 | $2,646 |
| Insurance | $1,103 | $1,103 | $1,103 | $1,103 | $1,103 | $1,103 | $1,103 | $1,103 | $1,103 | $1,103 | $1,103 | $1,103 | $13,230 |
| Misc. + Advertising | $1,103 | $1,103 | $1,103 | $1,103 | $1,103 | $1,103 | $1,103 | $1,103 | $1,103 | $1,103 | $1,103 | $1,103 | $13,230 |
| Repairs/Maintenance | $1,654 | $1,654 | $1,654 | $1,654 | $1,654 | $1,654 | $1,654 | $1,654 | $1,654 | $1,654 | $1,654 | $1,654 | $19,841 |
| Security | $1,764 | $1,764 | $1,764 | $1,764 | $1,764 | $1,764 | $1,764 | $1,764 | $1,764 | $1,764 | $1,764 | $1,764 | $21,166 |
| Supplies(off. and operation) | $1,213 | $1,213 | $1,213 | $1,213 | $1,213 | $1,213 | $1,213 | $1,213 | $1,213 | $1,213 | $1,213 | $1,213 | $14,553 |
| Taxes (real estate etc.) | $110 | $110 | $110 | $110 | $110 | $110 | $110 | $110 | $110 | $110 | $110 | $110 | $1,323 |
| Telephone | $276 | $276 | $276 | $276 | $276 | $276 | $276 | $276 | $276 | $276 | $276 | $276 | $3,308 |
| Utilities | $5,513 | $5,513 | $5,513 | $5,513 | $5,513 | $5,513 | $5,513 | $5,513 | $5,513 | $5,513 | $5,513 | $5,513 | $66,150 |
| MISC & Other Expenses | $2,205 | $2,205 | $2,205 | $2,205 | $2,205 | $2,205 | $2,205 | $2,205 | $2,205 | $2,205 | $2,205 | $2,205 | $26,467 |
| Interest | $1,670 | $1,647 | $1,625 | $1,602 | $1,579 | $1,556 | $1,533 | $1,509 | $1,485 | $1,462 | $1,438 | $1,414 | $18,519 |
| Subtotal | $187,810 | $187,787 | $195,287 | $202,787 | $180,197 | $180,173 | $187,673 | $195,172 | $202,670 | $202,647 | $180,055 | $180,031 | $2,282,289 |
| Loan Principal Payment | $4,293 | $4,315 | $4,338 | $4,361 | $4,384 | $4,407 | $4,430 | $4,454 | $4,477 | $4,501 | $4,525 | $4,549 | $53,036 |
| Line of Credit Repayment | | | | | | | | | | | | | $0 |
| Investors Bank First Mortgage | | | | | | | | | | | | | $0 |
| Enterprise Zone Funding 2nd lien | | | | | | | | | | | | | $0 |
| Winghards Investment Income | | | | | | | | | | | | | $0 |
| | | | | | | | | | | | | | $0 |
| Shareholder Draws | | | | | | | | | | | | | $0 |
| Working Capital | | | | | | | | | | | | | $0 |
| TOTAL CASH PAID OUT | $192,103 | $192,103 | $199,625 | $207,148 | $184,580 | $184,580 | $192,103 | $199,625 | $207,148 | $207,148 | $184,580 | $184,580 | $2,335,324 |
| CASH POSITION | $1,180,432 | $1,237,779 | $1,318,785 | $1,423,449 | $1,457,138 | $1,490,826 | $1,548,173 | $1,629,179 | $1,733,844 | $1,838,508 | $1,872,197 | $1,905,885 | |

# WINGHARTS

## INCOME STATEMENT ANALYSIS

| | FY 2015 | | FY 2016 | | FY 2017 | |
|---|---|---|---|---|---|---|
| Bar Sales | $1,200,000 | 44.5% | $1,272,000 | 44.1% | $1,348,320 | 43.2% |
| Food Sales | $1,400,000 | 51.9% | $1,512,000 | 52.4% | $1,663,200 | 53.3% |
| Events& Other Sales | $50,000 | 1.9% | $54,000 | 1.9% | $59,400 | 1.9% |
| Wingharts Prep Rent | $36,000 | 1.3% | $36,000 | 1.2% | $36,180 | 1.2% |
| Misc | $10,000 | 0.4% | $10,500 | 0.4% | $11,025 | 0.4% |
| Total Sales | $2,696,000 | 100.0% | $2,884,500 | 100.0% | $3,118,125 | 100.0% |
| | | | | | | |
| COGS | | | | | | |
| COGS - Bar Sales | $264,000 | 9.8% | $133,560 | 4.6% | $148,315 | 4.8% |
| COGS - Food Sales | $504,000 | 18.7% | $544,320 | 18.9% | $598,752 | 19.2% |
| COGS - Events & other | $2,500 | 0.1% | $2,700 | 0.1% | $2,970 | 0.1% |
| COGS - Prep Rent | $576 | 0.0% | $0 | 0.0% | $0 | 0.0% |
| COGS - Misc | $0 | 0.0% | $2,100 | 0.1% | $2,205 | 0.1% |
| Total COGS | $771,076 | 28.6% | $682,680 | 23.7% | $752,242 | 24.1% |
| | | | | | | |
| Gross Profit | $1,924,924 | 71.4% | $2,201,820 | 76.3% | $2,365,883 | 75.9% |
| | | | | | | |
| Less: Operating Expenses | | | | | | |
| Wages | $1,020,000 | 37.8% | $1,071,000 | 37% | $1,124,550 | 36% |
| Payroll Taxes | $122,400 | 4.5% | $128,520 | 4% | $134,946 | 4% |
| Rent + NNN | $0 | 0.0% | $0 | 0% | $0 | 0% |
| Credit Card Charges | $60,000 | 2.2% | $63,000 | 2% | $66,150 | 2% |
| Cable & Internet | $3,600 | 0.1% | $3,780 | 0% | $3,969 | 0% |
| Garbage/Dumpster | $2,400 | 0.1% | $2,520 | 0% | $2,646 | 0% |
| Insurance | $12,000 | 0.4% | $12,600 | 0% | $13,230 | 0% |
| Misc. + Advertising | $12,000 | 0.4% | $12,600 | 0% | $13,230 | 0% |
| Repairs/Maintenance | $18,000 | 0.7% | $18,900 | 1% | $19,845 | 1% |
| Security | $19,200 | 0.7% | $20,160 | 1% | $21,168 | 1% |
| Supplies(off. and operation) | $1,200 | 0.0% | $1,260 | 0% | $1,323 | 0% |
| Taxes( real estate etc.) | $13,200 | 0.5% | $13,860 | 0% | $14,553 | 0% |
| Telephone | $3,000 | 0.1% | $3,150 | 0% | $3,308 | 0% |
| Utilities | $60,000 | 2.2% | $63,000 | 2% | $66,150 | 2% |
| MISC & Other Expenses | $24,000 | 0.9% | $25,200 | 1% | $26,460 | 1% |
| | | | | | | |
| Total Operating Expenses | $1,371,000 | 50.9% | $1,439,550 | 49.9% | $1,511,528 | 48.5% |
| Operating Profit (Loss) | $553,924 | 20.5% | $762,270 | 26.4% | $854,355 | 27.4% |
| | | | | | | |
| Other Income (Expenses) | | | | | | |
| Interest | ($24,708) | -0.9% | ($21,740) | -0.8% | ($18,519) | -0.6% |
| | | | | | | |
| Pre Tax Profit | $529,216 | 19.6% | $740,530 | 25.7% | $835,836 | 26.8% |
| Tax Expense | $0 | 0.0% | $0 | 0.0% | $0 | 0.0% |
| Net Profit | $529,216 | 19.6% | $740,530 | 25.7% | $835,836 | 26.8% |

## CASH-FLOW ANALYSIS

| | FY 2015 | FY 2016 | FY 2017 |
|---|---|---|---|
| Ending balance | $432,369 | $1,123,084 | $1,905,885 |
| Minimum balance | ($50,000) | $482,589 | $1,180,432 |
| Maximum balance | $432,369 | $1,123,084 | $1,905,885 |

## BREAK-EVEN ANALYSIS

Break-Even Total Sales:  $1,920,188

Financials_- Wingharts 6.xls  3/31/2014        computed by goal seek or backsolving sales to equal

**City of McKeesport**
201 Lysle Boulevard
McKeesport, PA 15132



## APPLICATION FOR NON-RESIDENTIAL OCCUPANCY CERTIFICATE

*Shaded areas to be completed by applicant.*

PROPERTY ADDRESS: 623 LONG RUN DR. McKeesport PA 15232

BUSINESS OWNER HOME ADDRESS: 5 MARKET SQ, PBG PA 15222

BUSINESS OWNER HOME PHONE # 412 607 7675   BUSINESS PHONE #:

BUSINESS NAME: MAYA RESTAURANTS INC   NATURE OF BUSINESS: RESTAURANT

PROPERTY OWNER: MAYA RESTAURANTS INC

OWNER HOME ADDRESS: 623 LONG RUN Rd   McKEESPORT PA 15232

OWNER HOME PHONE #: 412 607 7675   OWNER BUSINESS PHONE #:

*Application is hereby made for permission to occupy the premises above described for the purpose herein stated. If such use complies with provisions of all laws and ordinances, and certificate of occupancy is used, it is understood by the applicant that the said certificate will authorize only the use stated in this application and that such use may not legally be extended or changed without authorization in a new certificate of occupancy.*

DATE: 1-14-2016

SIGNATURE OF APPLICANT   PRINT APPLICANT NAME

CONSTRUCTION OF BUILDING: STONE / CONCRETE   NO. OF STORIES: 1½

PRESENT OCCUPANCY: _____   PRESENT ZONING: _____

LEGALLY EXISTING NON-CONFORMING BUILDING: _____

LEGALLY EXISTING NON-CONFORMING USE: RESTAURANT & BAR

VARIANCE APPLIED FOR (if applicable) _____   DATE ACCEPTED: _____

This is to certify that MAYA RESTAURANTS INC is in compliance with the Building Code of the City of McKeesport and is permitted to occupy said premises or buildings for purpose as stated in this application.

Inspection Date: 1-13-16   Certificate Number: _____   Issue Date: 1-14-16

Inspected by: _____   _____
                Building Inspector          Fire Chief

Notes: * call for re-inspection to verify recharging of fire estinguishers

This is to certify that _____ is fully registered with the Finance Office of the City of McKeesport for all taxes, fees, and services therein provided.

_____          _____          _____
Signature          Title          Date

**Scanned by CamScanner**

# EXHIBIT 3



**WILSON BAUM REAL ESTATE**
314 Long Run Road, McKeesport, PA 15132
Phone: 412-751-2200     Facsimile: 412-751-2207
www.HowardHannaWilsonBaum.com

June 16, 2014

Chuck Starrett

RE: Market Value Opinion
     623 Long Run Road, McKeesport, PA 15132

Hi Chuck,

  I have used the capitalization of net income approach to render on opinion of value. I could not find any comparable sales in a one to two mile radius, therefore the income approach.
  In arriving at the income approach valuation I imputed the rental income as if the property was purchased as an investment property and not owner occupied with a business, unless he paid rent as well. Business income in owner occupied would not be considered.
  I have used the McKeesport area per square foot rental rate of $6.00 per square foot. This building is 38,000 square feet considering first level, second level and finished small lower level.
  Therefore, I have determined the following:

Annual Income ($19,000 per month)       $228,000

Annual Expenses
| | |
|---|---|
| Trash / Dumpster | $ 24,000 |
| Insurance | 12,000 |
| Maintenance / Repairs | 18,000 |
| Security | 19,200 |
| Real Estate Taxes | 13,200 |
| Utilities | 60,000 |
| Miscellaneous & other expenses | 24,000 |

        Total       148,800

        Net Annual Income   $ 79,200

Using the McKeesport Capitalization rate of 11%

The investment income market value opinion is $720,000



"Independently Owned and Operated"

The building has not been in service for many years, which therefore may require fairly extensive remodeling and repair expenses. The location is on PA Route 48, which is a four lane road providing good access for the public. The property is across from the Olympia Shopping Center and close by residential areas. I considered all of the positive advantages and other uses of the building when I used the $6.00 per square foot rental rate.

Taking into consideration all the facts, I have determined the approximate market value opinion to be $700,000.

Very truly yours,

Robert W. Baum
Certified Broker Appraiser
License # BA001595L